PEOPLE v PROPHET

Docket No. 46683. Submitted September 3, 1980, at Detroit.—Decided
November 20, 1980.

Mallory V. Prophet was convicted of armed robbery in Recorder's
Court of Detroit, Michael F. Sapala, J. Defendant appeals.
*Held:*

1. Third-person testimony concerning prior identification of a
criminal defendant should be confined to a narration of the
circumstances surrounding the identification and should not
include any statement of the identification itself. The trial
court erred in allowing two police officers to testify concerning
out-of-court identification of defendant by two witnesses. How-
ever, the error was harmless, since the same facts were also
shown by other competent testimony.

2. Defendant contended that the trial court erred in admit-
ting certain evidence. The Court of Appeals had already de-
cided the issue in a previous interlocutory appeal. A legal
question which has been raised in one appeal may not be raised
again in a subsequent appeal after proceedings held on remand
to the lower court.

3. Defendant claimed that the trial court erred in refusing to
instruct the jury that alibi, if established, is the perfect defense.
The trial court did instruct the jury to acquit the defendant if
they had a reasonable doubt whether he was present at the
time and place of the crime. The instruction given was suffi-
cient in this case and would be in most cases.

Affirmed.

1. CRIMINAL LAW — IDENTIFICATION EVIDENCE — THIRD-PARTY TESTI-
MONY — RULES OF EVIDENCE.
Third-person testimony concerning prior identification of a crimi-

REFERENCES FOR POINTS IN HEADNOTES
[1] 29 Am Jur 2d, Evidence §§ 373, 493 *et seq.*
[2] 5 Am Jur 2d, Appeal and Error § 806.
[3] 5 Am Jur 2d, Appeal and Error § 744.
[4] 75 Am Jur 2d, Trial § 731 *et seq.*
Duty of court, in absence of specific request, to instruct on subject
of alibi. 72 ALR3d 351.

nal defendant should be confined to a narration of the circumstances surrounding the identification and should not include any statement of the identification itself (MRE 801[d][1]).

2. EVIDENCE — HEARSAY — HARMLESS ERROR.
   The erroneous admission of hearsay testimony is harmless where the same facts are shown by other competent testimony.

3. APPEAL — LAW OF THE CASE.
   A legal question which has been raised in one appeal may not be raised again in a subsequent appeal after proceedings held on remand to the lower court.

4. CRIMINAL LAW — DEFENSES — ALIBI — JURY INSTRUCTIONS.
   Once an alibi defense is properly noticed and evidence is produced to establish it, an instruction to the jury that they must acquit the defendant if they have any reasonable doubt that he was present at the time the crime was committed is sufficient in most cases.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Edward Reilly Wilson,* Principal Attorney, Appeals, and *Don W. Atkins,* Assistant Prosecuting Attorney, for the people.

*Robert E. Slameka,* for defendant.

Before: D. C. RILEY, P.J., and J. H. GILLIS and V. J. BRENNAN, JJ.

D. C. RILEY, P.J. Defendant, convicted by a Detroit Recorder's Court jury of armed robbery in violation of MCL 750.529; MSA 28.797, was sentenced to 15 to 30 years imprisonment and appeals as of right.

One witness testified that on January 23, 1979, at approximately 8 p.m., while in a supermarket parking lot, defendant robbed her at gunpoint, stealing her jewelry, checkbook and various pieces of identification. The prosecution produced a second witness, under the similar acts statute, who

testified that on February 17, 1979, while entering her automobile at a Detroit shopping center, defendant robbed her at gunpoint and stole her automobile. Both victims positively identified the defendant as their assailant at separately held lineups, and he was further identified by both at trial.

A third witness, representing a shopping mall in Sterling Heights, testified to an incident he witnessed on February 19, 1979, in one of their stores. He observed defendant in the presence of two women, one of whom was writing a check while the other helped defendant handle merchandise. The woman writing the check possessed identification bearing the name of the victim who had been robbed on January 23, 1979, and indeed signed the check in the victim's name. At that time, the two women, along with the defendant, were arrested.

Defendant sought to rebut this prosecution evidence by offering alibi witnesses. A part-time teacher for the Detroit Board of Education testified that defendant was enrolled in her class and was present to pick up his grades on January 23, 1979, sometime between the hours of 7:30 p.m. and 8:30 p.m. Additionally, a classmate of defendant testified that she was present at the school to pick up her grades, saw the defendant, had a conversation with him at a nearby restaurant, and thereafter was driven home by the defendant. She testified that this occurred between the hours of 7:30 and 10 p.m. on January 23, 1979.

Defendant's first assertion of error is that the trial judge erred in permitting, over objection, testimony of two police officers concerning the circumstances surrounding the victims' out-of-court identification of defendant.[1]

---

[1] The following colloquys between the prosecutor and the police officers constitute the objectionable testimony:

In *People v Sanford,* 402 Mich 460; 265 NW2d 1 (1978), the Supreme Court, in three separate opinions, analyzed the impact of MRE 801(d)(1)[2] on prior Michigan law concerning the admissibility of third-party identification testimony. The identification in *Sanford* was not arranged by the police, as it was in the instant case; rather, it was initiated by the complaining witness, who spotted the defendant in a store the day after he was assaulted and called the police. The Supreme Court split on the question of how far the new rule goes in allowing third-party identification testimony.

Justices WILLIAMS, MOODY and COLEMAN held that the trial judge had acted properly in admitting testimony from a police officer that was limited to the *circumstances* surrounding the identification procedure. Although the plurality recognized the dangers inherent in permitting third parties to bolster identification testimony given by the identifier, citing *People v Anderson,* 389 Mich 155; 205 NW2d 461 (1973), they concluded that the

"*Q. [Prosecuting attorney]:* All right. And did the witness—or did the complainant, * * * make an identification?

"*A. [First police officer]: Yes, she did.*

"*Q.* And what did she state to you when she made the identification?

"MS. MAXWELL *[Defense attorney]:* Objection, hearsay.

"THE COURT: Overruled.

"*A.* 'I'm positive it's Number 4. He put a gun to my head and took my car.' "

"*Q. [Prosecuting attorney]:* And who was it that [the witness] picked out of that line-up of five people?

"*A. [Second police officer]:* Number 3, Mallory Prophet.

"*Q.* What did she say?

"*A.* She said that she was positive it was him."

[2] MRE 801(d)(1) provides:

"(d) Statements which are not hearsay. A statement is not hearsay if—

"(1) Prior statement of witness. The declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is one of identification of a person made after perceiving him."

trial court has discretion to admit such testimony "when limited to the circumstances surrounding the event". *Sanford, supra,* 491-492.

Justices RYAN and FITZGERALD went further in analyzing the outer limits of MRE 801(d)(1). Although they, too, agreed that the officer's testimony was admissible, they disagreed with the plurality's *characterization* of that testimony. According to them, the officer's testimony went beyond a narrative of the circumstances surrounding the identification and consisted of a *repetition* of the witness's words and included a description of the witness's assertive conduct. Justices RYAN and FITZGERALD resolved that, despite what the plurality said, the officer's testimony in *Sanford* went "beyond the limited range of the facts and circumstances of the identification". *Sanford, supra,* 497.[3]

---

[3] The testimony at issue in *People v Sanford,* 402 Mich 460, 496; 265 NW2d 1 (1978) was as follows:

"The objectionable portions of the officer's testimony are found in the following colloquy between the prosecutor and the officer:

" '*Q. (By Mr. Morgan):* After Mr. Booker Anderson came in, what happened next?

" '*A. Mr. Anderson came into the pool hall and pointed out a gentleman, saying, "That is one of them."*

" '*Q.* What happened next, after that?

" '*A. Mr. Anderson pointed to one of the defendants.* My partner walked up behind him and asked him to come to the door.

" '*Q.* What happened next?

" '*A.* He was placed in custody.

" '*Q.* What happened after that?

" '*A. Mr. Anderson then pointed out the other gentleman, when we were outside. He said, "The other one is inside."*

" '*Q.* Then what happened next?

" '*A.* We also went and got that defendant.

" '*Q.* And placed him under arrest also?

" '*A.* We did, sir.

" '*Q.* Officer Stafford, do you see either of those two persons who you arrested at the billiard hall in court this morning?

" '*A.* I do, sir.

" '*Q.* Would you point to them and indicate what they are wearing.

" '*A. The first one pointed out to us is the gentleman wearing the black and green trousers.*

" '*Q. Mr. Morgan:* Indicating for the record, Mr. Reginald Gardner.

Nevertheless, they concluded that the adoption of MRE 801(d)(1) permitted the admission of such testimony "under certain limited circumstances". *Sanford, supra,* 497.

Justices KAVANAGH and LEVIN disagreed that MRE 801(d)(1) was meant to open the doors so widely to what had previously been inadmissible hearsay: "MRE 801(d)(1) was not designed to permit testimony by persons other than the identifying witness." *Sanford, supra,* 499-500.

In the wake of *Sanford,* perhaps all that can be said is that the exact parameters of MRE 801(d)(1) on third-party identification testimony remain unsettled. This Court, nevertheless, has previously rejected the prosecutor's argument that MRE 801(d)(1) excludes the statements at issue from the definition of hearsay. *People v Hoerl,* 88 Mich App 693, 701-702, fn 5; 278 NW2d 721 (1979), *People v Washington,* 84 Mich App 750, 755-756; 270 NW2d 511 (1978). Although the rule has been interpreted as permitting a witness to testify concerning his or her own identification, this Court has not yet held that the rule allows a third party to testify concerning the identification of another. *Cf., People v Adams,* 92 Mich App 619; 285 NW2d 392 (1979).

We believe an important distinguishing factor between *Sanford* and the instant case is that here the police arranged the circumstances under which the identification was made. Until the Supreme Court clarifies what those "certain limited circumstances" are alluded to in *Sanford,* under which third persons may testify regarding prior

---

" '*A. And sitting down at the checker table inside the pool hall is the gentleman in the green pullover sweater.*

" '*Mr. Morgan:* Indicating for the record, Mr. Dwight Sanford.

" '*Q. (By Mr. Morgan):* You say he was seated at the checker table?

" '*A.* Yes. Mr. Gardner was playing pool, and Mr. Sanford was playing checkers.' (Emphasis added.) Trial Transcript, pp 78-79."

identification, we hold that they should be confined to relating the circumstances surrounding the identification and should not, as here, be permitted to repeat the statement of identification. This is especially true where, as here, a central issue at trial is identification and where the third party is a police officer, whose testimony may be given undue weight by the jury.

While we conclude that it was error to permit the officer to repeat the statement of identification, we also conclude that it was harmless beyond a reasonable doubt. As stated in *People v Hoerl, supra,* this Court has often held that the erroneous admission of hearsay testimony is harmless where the same facts are shown by other competent testimony. *People v Vargas,* 50 Mich App 738, 741-742; 213 NW2d 848 (1973), *lv den* 392 Mich 815 (1974), *People v Harrison,* 49 Mich App 546; 212 NW2d 278 (1973), *lv den* 392 Mich 779 (1974), *People v Dykes,* 37 Mich App 555; 195 NW2d 14 (1972). Here, as in *Hoerl,* both witnesses identified the defendant at trial and both testified that they had identified defendant at lineups. This testimony renders the error harmless.

Next defendant argues that the trial court erred by admitting evidence that defendant was present at the Sterling Heights shopping mall with two women, one of whom possessed property that was identified as belonging to the victim of the robbery for which defendant was tried. The propriety of admitting this evidence has already been decided by this Court in a previous interlocutory appeal. Pursuant to an order of this Court, we vacated the trial court's order suppressing the evidence and ruled that it was competent, citing *People v Delgado,* 404 Mich 76; 273 NW2d 395 (1978), *People v Duncan,* 402 Mich 1; 260 NW2d 58 (1977), *People v Spillman,* 399 Mich 313; 249 NW2d 73 (1976).

It is a well-settled rule that once a legal issue has been decided on one appeal, it may "not be raised again in a subsequent appeal after proceedings held on remand to the lower court". *People v Paintman,* 92 Mich App 412, 416; 285 NW2d 206 (1979). See also, *Allen v Michigan Bell Telephone Co,* 61 Mich App 62; 232 NW2d 302 (1975), *People v Radowick,* 63 Mich App 734; 235 NW2d 28 (1975). Since defendant may not now collaterally attack our prior ruling, we hold that defendant's second contention is without merit.

Defendant's final claim of error relates to the trial court's failure, over objection, to instruct the jury that alibi, if established, is a perfect defense. CJI 7:2:02. The trial judge did instruct the jury that if they had a reasonable doubt whether the defendant was present at the time and place of the crime charged, that they should find defendant not guilty. CJI 7:2:01. Explaining his reasoning for not instructing on the perfect alibi avenue of relief, the judge said: "I am in disagreement on the committee's, the choice of that language. I believe that it's much too strong as a language. I will not give it."

*People v Erb,* 48 Mich App 622, 630; 211 NW2d 51 (1973), stated that "[a]n instruction to the jury concerning the defense of alibi must clearly explain that this defense offers two avenues of relief for the defendant". One avenue is that founded on clear proof of the alibi. This has been termed a perfect defense. The second avenue of relief is that founded on reasonable doubt that the defendant was present at the time that the crime was committed. Although the judge in *Erb* did not give the perfect defense instruction, this Court did not reverse, despite the "must clearly explain" language, because the instruction given "adequately

advised the jury that, should any reasonable doubt exist as to the presence of the defendant at the scene of the crime, he should be acquitted". 48 Mich App 622, 631. Thus, *Erb* did not announce a clear rule that both avenues of relief must be instructed on or error is committed. However, it does not appear that defendant in *Erb* requested the perfect defense instruction or objected to the court's failure or refusal to give it.

In *People v Adams,* 66 Mich App 616; 239 NW2d 683 (1976), *lv den* 396 Mich 849 (1976), an alibi instruction was given and defendant stated he was satisfied therewith. On appeal, however, defendant claimed the court's failure to give the perfect defense instruction was error in light of *Erb, supra.* This Court held that manifest injustice did not result from the failure to instruct as to the perfect defense:

"In the present case, the court did instruct on the 'reasonable doubt' aspect of the defense but did not mention the 'perfect defense' avenue. This second avenue, in effect, informs the jury that if they believe a defendant's evidence, then the alibi defense is absolute and they must find the defendant not guilty. Viewed in this light, the 'perfect defense' avenue can be considered as a logical extension of the 'reasonable doubt' standard, since the jury's finding that a defendant was somehwere else would by necessity also raise a reasonable doubt as to his presence at the scene of the crime. Contrariwise, if the jury found that the evidence did not establish the 'perfect defense', they could nevertheless still find the evidence sufficient to raise a reasonable doubt as to the defendant's whereabouts at the time in question.

"Applying these factors to the present case, we find that the above instruction, albeit erroneous, does not warrant a reversal on this ground.

"As previously noted, a jury finding that the greater 'perfect defense' aspect existed would by definition also

require a finding that the lesser 'reasonable doubt' standard existed, but not vice versa. Thus, a jury instruction which stresses only the lesser standard does not prejudice a defendant to the same degree as would an instruction stressing only the greater standard, since a finding by a jury of the lesser is all that is necessary in order to reach a verdict of not guilty. Consequently, the failure to instruct on the greater, at least in the absence of an objection, does not result in sufficient prejudice to constitute a showing of manifest injustice." 66 Mich App 616, 618-619. (Footnote omitted.)

We do not read *Erb, Adams,* or *People v Burden,* 395 Mich 462; 236 NW2d 505 (1975), as *unequivocally* requiring instruction on both "avenues of relief" whenever an alibi instruction is requested. Rather, *Adams* merely held that "at least in the absence of an objection", the failure to instruct on the perfect defense "does not result in sufficient prejudice to constitute a showing of manifest injustice". 66 Mich App 616, 619. This statement does not address the existence of error where an objection is made. That issue was not before the Court in *Adams* and consequently the opinion could not address the existence of error where an objection is made.

Our reading of the instant case persuades us that the giving of the reasonable doubt alibi instruction was sufficient in this case, and would be sufficient in most cases, precisely because the perfect defense instruction is a logical extension of the concept that reasonable doubt requires acquittal.

The rule setting forth "two avenues of relief" was necessitated by cases in which only the perfect defense instruction was given. In such cases, the jury was in effect instructed that unless they determined that defendant's alibi was clearly established, they could not acquit on that basis. See,

*e.g., People v Virgil Brown,* 15 Mich App 600, 605; 167 NW2d 107 (1969) ("the * * * instruction * * * leaves much to be desired, in that it ignores the use of alibi as raising a reasonable doubt"), *People v McShan,* 53 Mich App 407, 415-418; 219 NW2d 792 (1974) (the lower court's failure to give the reasonable doubt/alibi instruction "constitutes manifest injustice and thus reversible error"), *People v William Johnson,* 54 Mich App 678, 683-684; 221 NW2d 452 (1974) (citing *McShan,* the Court found reversible error in the trial judge's failure to include the reasonable doubt/alibi instruction when he gave the perfect [absolute] defense instruction), *People v John Johnson,* 58 Mich App 60, 65-66; 227 NW2d 228 (1975) (reversible error apparently found on the basis of *Erb, McShan* and *William Johnson,* because only the perfect defense instruction was given).

Where only the reasonable doubt/alibi instruction is given, there is no prejudice or manifest injustice to defendant. Indeed, the giving of both instructions may be unnecessarily confusing to a jury which must first determine why the natural corollary of the reasonable doubt concept was given before it can apply both instructions to its analysis of the evidence. Where the jury is instructed to acquit if it finds a reasonable doubt as to defendant's presence at the scene of the crime, and it nevertheless finds defendant guilty, such verdict implies that, even if the perfect defense instruction had been given, acquittal could not have resulted.

Affirmed.