PEOPLE v PRICE

Docket No. 48122. Submitted October 13, 1981, at Detroit.—Decided
February 2, 1982.

William B. Price was convicted by a jury in Wayne Circuit Court
of felonious assault and first-degree criminal sexual conduct
and was sentenced, Roman S. Gribbs, J. Defendant appeals.
*Held:*

1. The delay between defendant's arrest and his arraignment
was neither unreasonable nor occasioned solely for the purpose
of coercing a confession.

2. The trial court did not err in finding that a statement
defendant made to police was voluntary and admissible.

3. The trial court correctly ruled that testimony as to the
possibility of blood-typing bloodstains found at the scene of the

---

REFERENCES FOR POINTS IN HEADNOTES

[1-3] 21 Am Jur 2d, Criminal Law § 408.

[2, 3] 29 Am Jur 2d, Evidence § 547.

Construction and application of provision of Omnibus Crime Con-
trol and Safe Streets Act of 1968, as amended (18 USCS § 3501[c]),
that defendant's confession shall not be admissible in evidence in
federal criminal prosecution solely because of delay in arraign-
ment. 12 ALR Fed 377.

Admissibility of pretrial confession in criminal case—Supreme
Court cases. 1 L Ed 2d 1735, 4 L Ed 2d 1833, 12 L Ed 2d 1340, 16
L Ed 2d 1294.

Admissibility of confession as affected by delay in arraignment of
prisoner. 19 ALR2d 1331.

[3] 29 Am Jur 2d, Evidence §§ 545, 575, 582.

[4, 5] 5 Am Jur 2d, Appeal and Error § 867.

29 Am Jur 2d, Evidence § 590.

[6] 29 Am Jur 2d, Evidence § 370.

Admissibility, weight, and sufficiency of blood-grouping tests in
criminal cases. 2 ALR4th 500.

Blood grouping tests. 46 ALR2d 1000.

[7] 29 Am Jur 2d, Evidence § 251.

[8] 29 Am Jur 2d, Evidence § 373.

Admissibility of evidence as to extrajudicial or pretrial identifica-
tion of accused. 71 ALR2d 449.

[9] 5 Am Jur 2d, Appeal and Error § 806.

crime and the police reasons for declining to perform such tests was speculative and irrelevant to any material issue at trial.

4. It was error for the trial court to allow a police officer and the victim's daughter to repeat the victim's statement of identification of defendant as her attacker. The error was harmless beyond a reasonable doubt, however, because defendant's identity as the perpetrator was adequately established at trial by other competent evidence.

5. Defendant was not denied effective assistance of counsel.

Affirmed.

1. CRIMINAL LAW — PRETRIAL PROCEDURES — ARREST — ARRAIGNMENT.

Unnecessary delay between arrest and arraignment is prohibited by statute; the statute, however, does not require immediate arraignment of a defendant (MCL 764.26; MSA 28.885).

2. CRIMINAL LAW — EVIDENCE — PRE-ARRAIGNMENT DETENTION — INCRIMINATING STATEMENTS.

An incriminating statement made during prearraignment detention should not be excluded from evidence unless delay in the arraignment was used as a tool to extract a confession.

3. CRIMINAL LAW — STATEMENTS — VOLUNTARINESS.

The relevant factors to be considered in determining the voluntariness of a criminal defendant's statements are: (1) the duration and conditions of detention, (2) the attitude of the police toward the accused, (3) the physical and mental state of the accused, and (4) the diverse pressures which sap or sustain the accused's power of resistance or self-control.

4. CRIMINAL LAW — CONFESSIONS — VOLUNTARINESS — APPEAL AND ERROR.

An appellate court, when reviewing a trial court's rulings on the voluntariness of a defendant's confession, must examine the entire record and draw its own conclusions; however, if there is conflicting evidence and the determination of voluntariness is largely dependent on the credibility of witnesses, the appellate court should defer to the trial court's findings.

5. CRIMINAL LAW — STATEMENTS — VOLUNTARINESS.

Reversal of a trial court's determination of the voluntariness of a criminal defendant's statement is required only where the trial court's finding is clearly erroneous.

6. CRIMINAL LAW — EVIDENCE — BLOOD TEST RESULTS.

The police must make available to a defendant upon request the

results of any blood-typing tests they conduct upon the defendant where the evidence is material to either guilt or punishment.

7. EVIDENCE — RELEVANCY — APPEAL — RULES OF EVIDENCE.

The determination of relevancy of evidence is within the sound discretion of the trial judge, whose decision will not be disturbed on appeal absent a clear abuse of discretion (MRE 401).

8. CRIMINAL LAW — EVIDENCE — WITNESSES — IDENTIFICATION OF DEFENDANT — RULES OF EVIDENCE.

A third person's testimony regarding a witness's prior identification of a criminal defendant must be limited to relating the circumstances surrounding the identification (MRE 801[d][1]).

9. EVIDENCE — HEARSAY — HARMLESS ERROR.

The erroneous admission of hearsay testimony is harmless where the same facts are shown by other competent evidence.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Edward Reilly Wilson,* Principal Attorney, Appeals, and *Larry L. Roberts,* Assistant Prosecuting Attorney, for the people.

*Lander C. McLoyd,* Assistant State Appellate Defender, for defendant on appeal.

Before: N. J. KAUFMAN, P.J., and J. H. GILLIS and CYNAR, JJ.

J. H. GILLIS, J. Defendant was charged with Count I, assault with intent to murder, MCL 750.83; MSA 28.278, Count II, first-degree criminal sexual conduct, MCL 750.520b; MSA 28.788(2), and Count III, breaking and entering with intent to commit criminal sexual conduct, MCL 750.110; MSA 28.305. On August 3, 1979, he was convicted by a jury of Count I, felonious assault, MCL 750.82; MSA 28.277, and Count II, first-degree criminal sexual conduct. He was acquitted of the charge in Count III. Defendant was sentenced to

concurrent terms of 2 years and 8 months to 4 years imprisonment on the felonious assault conviction and 50 to 75 years imprisonment on the criminal sexual conduct conviction. He appeals as of right.

The charges against defendant arose out of the sexual assault of a 52-year-old mentally disabled woman. The complainant testified that on August 6, 1978, she was alone in the Lincoln Park apartment which she shared with her daughter. At approximately 3 a.m., she was awakened by a man on top of her. The man severely beat her, forced her to have sexual intercourse with him and choked her with a cord. Complainant eventually escaped to the kitchen where the man pursued her and knocked her to the floor. She lost consciousness and, when she came to, the man was gone.

Complainant's daughter testified that her mother was mentally disabled. When the daughter arrived at the apartment on the monring of the crime, she found her mother in a bruised and bloody condition. The police were called and complainant was taken to the hospital, where she received stitches above the eyebrow. Later, when complainant's daughter cleaned up the apartment, she discovered a kitchen knife under the mattress of her mother's bed. A thumbprint found on the knife was subsequently identified as that of the defendant.

Complainant was able to describe her assailant only as a small, young black man. A few days after the assault, she viewed some photographs at the police station. According to her own trial testimony, she was unable to identify any photograph as that of her assailant. However, her daughter and a police officer both testified that complainant did identify a photograph of defen-

dant as the man who assaulted her. At trial, complainant was also unable to identify defendant as the perpetrator.

A warrant was issued for defendant's arrest and, on November 24, 1978, defendant was arrested in Toledo in connection with another charge. Defendant was held by Ohio authorities until he was transported to Lincoln Park on January 11, 1979. The following day, defendant was questioned by Lincoln Park police and gave a written statement implicating himself in the assault on complainant. Defendant was not arraigned until after he gave the statement.

Defense counsel moved to suppress evidence of the photographic identification and the written statement given to the police. Following *Wade*[1] and *Walker*[2] hearings, the trial court denied the motions and the evidence was admitted at trial.

Defendant raises four issues for our consideration. Further facts will be cited where relevant to our discussion of those issues.

I. DID THE TRIAL COURT ERR IN FINDING DEFENDANT'S WRITTEN STATEMENT VOLUNTARY AND ADMISSIBLE?

Defendant argues that the police improperly delayed the arraignment in order to extract a confession from him.

MCL 764.26; MSA 28.885 prohibits unnecessary delay between arrest and arraignment. However, the statute does not require immediate arraignment of a defendant. *People v Ewing (On Remand)*, 102 Mich App 81, 85; 300 NW2d 742 (1980). An incriminating statement made during prearraign-

---

[1] *United States v Wade*, 388 US 218; 87 S Ct 1926; 18 L Ed 2d 1149 (1967).

[2] *People v Walker (On Rehearing)*, 374 Mich 331; 132 NW2d 87 (1965).

ment detention should not be excluded unless the delay was used as a tool to extract a confession. *Ewing (On Remand), supra, People v Antonio Johnson,* 85 Mich App 247; 271 NW2d 177 (1978).

The *Walker* hearing testimony established that on January 11, 1979, Sergeant Robert Paul, who was the officer in charge of the case, and Detective Ernest Kazensky transported defendant from Toledo to the Lincoln Park police station, where they arrived at approximately 6 p.m. Shortly after noon, on January 12, 1979, Sergeant Paul and Detective Kazensky took defendant from his cellblock to an interview room. Defendant was read his *Miranda*[3] rights and he stated that he understood them and signed the rights form. Defendant then made certain incriminating statements and, after approximately 1/2 hour to 1 hour of questioning, he wrote and signed a statement implicating himself in the crime.[4] Defendant was arraigned later that afternoon.

Sergeant Paul testified at the *Walker* hearing that his shift did not begin until 1 p.m. on January 12, 1979, and that he had instructed the morning shift not to have defendant arraigned because, as was his customary practice, he wanted to personally take defendant to the arraignment

---

[3] *Miranda v Arizona,* 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694; 10 ALR3d 974 (1966).

[4] Defendant gave the following handwritten statement to the police:
"I William Price went to my sister's wedding on a summer day and that day I got high off Valiums and whiskey. After the wedding was over, I went home and went to bed, but the next morning I awoke and I had bloodstains on my pants. I don't remember exactly what happened that night, but I remember going into a house where the sliding glass door was open, and struggling with some woman. I didn't know whose house it was, or who lived there. After struggling with this woman I think that I hit her with some object and that's most likely where the blood came from. I don't know what time it was, and I don't remember how I got there and how I got back home. To the best of my knowledge that's all I can remember. William Bryant Price, dated 1-12-79."

proceeding.[5] Sergeant Paul also testified that he delayed the arraignment in order to inform defendant of the evidence against him and to question defendant and allow him the opportunity to make a statement.

The delay between arrest and arraignment was less than 24 hours, most of which occurred during the night hours when arraignment would have been impossible. Upon a careful review of the record, we conclude that the delay was neither unreasonable nor occasioned solely for the purpose of coercing a confession. See *People v Joyner,* 93 Mich App 554, 559; 287 NW2d 286 (1979), *Antonio Johnson, supra.*

Defendant also contends that, even if the delay was not improper, the statement was involuntary. The purpose of a *Walker* hearing is to determine the voluntariness of a defendant's statement. Some of the relevant factors to be considered in this determination are: (1) the duration and conditions of detention, (2) the attitude of the police toward the accused, (3) the physical and mental state of the accused, and (4) the diverse pressures which sap or sustain the accused's power of resistance or self-control. *People v Anglin,* 111 Mich App 268; 314 NW2d 581 (1981), *People v Allen,* 8 Mich App 408, 412; 154 NW2d 570 (1967).

This Court is required to examine the record and make an independent decision when reviewing a trial court's determination of voluntariness. *People v Robinson,* 386 Mich 551; 194 NW2d 709 (1972), *People v Carl Johnson,* 99 Mich App 547; 297 NW2d 713 (1980). However, where the evidence is conflicting and the determination of vol-

---

[5] Sergeant Paul originally testified that on the morning of January 12, 1979, he was away, attending to other matters. He later checked his log sheets and determined that he did not come on duty until 1 p.m. that day.

untariness is largely dependent on the credibility of witnesses, the appellate court should defer to the trial court's findings. *Anglin, supra, Joyner, supra,* 558. Reversal is required only where the trial court's finding is clearly erroneous. *Anglin, supra, Carl Johnson, supra,* 556.

In the present case, defendant was advised of, and waived, his *Miranda* rights. Sergeant Paul and Detective Kazensky informed defendant of the charges and evidence against him and also informed him of unrelated charges pending in other cities. The record of the officer's *Walker* hearing testimony reveals that no threats or promises were made and no improper coercive tactics were used.

Defendant testified at the *Walker* hearing that he had been taking Valium at the Toledo jail and had received no Valium on January 12, 1979. At the time he was questioned he was nervous and scared and had a headache which he attributed to his inability to get Valium. According to his testimony, the officers told him that if he would "help" them, they would help him in solving the cases. Defendant understood this to mean that they would assist him in resolving the other pending charges. Defendant also testified that the officers stated that if he did not cooperate they would see that he received a sentence of life imprisonment.

Although the testimony was contradictory, the trial judge had the opportunity to listen to and view the witnesses and was in the best position to judge their credibility. After carefully reviewing the *Walker* hearing testimony, we hold that the trial court did not err in finding the statement voluntary and admissible.

II. Was the defendant denied due process and the right to present a defense because the trial court precluded him from cross-examin-

ING A WITNESS REGARDING THE POLICE FAILURE TO
CONDUCT BLOOD-TYPING TESTS AND FROM ARGUING
THAT THE POLICE DELIBERATELY REFUSED TO CON-
DUCT SUCH TESTS?

During defense counsel's cross-examination of
Sergeant Paul, it was established that blood-typing
tests had not been performed on the bloodstains
found at the scene of the crime. Defense counsel
then sought to explore the matter further by
asking the witness if he knew that such tests were
possible and why they had not been performed in
this case. The people objected and the trial court
ruled that any further evidence regarding the
police failure to perform a blood analysis would be
speculative and irrelevant.[6]

Defendant maintains that the police and prose-
cution were under an affirmative duty to preserve
the evidence and to test it to determine whether
defendant was excluded from the group of possible
donors, thereby conclusively proving his innocence.
We disagree.

Where the police do conduct blood-typing tests,
they must make the results available to defendant
upon request where the evidence is material to

[6] The trial court relied on this Court's decision in *People v Sturdi-
vant*, 91 Mich App 128; 283 NW2d 669 (1979), *lv den* 407 Mich 933
(1979), which held that while results of blood-typing tests are admissi-
ble to scientifically exclude a defendant from the group of possible
donors, such evidence is inadmissible where it is used solely for the
purpose of including defendant in the class of possible perpetrators.
The trial court reasoned that since it was speculative whether blood-
typing results would be admissible evidence, the jury should not be
allowed to consider whether the police improperly failed to perform
such tests.

It is noted that cases decided subsequent to *People v Sturdivant*,
*supra*, have held that blood analysis results are admissible to include
defendant in a class of possible perpetrators and that the weight of
such evidence is for the jury to determine. See, *e.g., People v Young*,
106 Mich App 323; 308 NW2d 194 (1981), *People v Horton*, 99 Mich
App 40; 297 NW2d 857 (1980), *vacated on other grounds* 410 Mich 865
(1980).

either guilt or punishment. See *Brady v Maryland,* 373 US 83; 83 S Ct 1194; 10 L Ed 2d 215 (1963). However, this case does not involve police or prosecutorial suppression of potentially exculpatory evidence.

We observe, without so deciding, that in certain circumstances the police may be obligated to perform blood-typing tests to determine whether a defendant may be scientifically excluded from a class of possible donors. However, in the present case, there was every indication that the bloodstains in question contained complainant's rather than her assailant's blood. Under these circumstances, the police properly exercised their discretion in declining to perform blood-typing analyses.[7]

The determination of relevancy under MRE 401 is within the sound discretion of the trial judge, and his decision will not be disturbed on appeal absent a clear abuse of discretion. *People v Rimson,* 63 Mich App 1; 233 NW2d 867 (1975). The trial court correctly ruled that testimony as to the possibility of blood-typing the bloodstains and the police reasons for declining to perform such tests was speculative and irrelevant to any material issue at trial.

III. DID THE TRIAL COURT ERR IN ADMITTING THIRD-PARTY TESTIMONY REGARDING THE PHOTO-

[7] Defendant also contends on appeal that the police were required to perform a blood-typing analysis on sperm cells which were found in a vaginal smear taken from complainant a few hours after the crime occured. However, there is no indication from the record that the sperm cells were ever made available to the police or that it would have been scientifically possible to perform a conclusive blood analysis on the substances extracted from complainant's vagina. Since defendant's trial counsel made no offer of proof with regard to the alleged failure of the police to obtain the sperm cells and perform a blood-typing analysis, the issue has not been preserved for appellate review. We note, however, that defendant has cited no authority which would place an affirmative duty on the police to obtain and test the sperm cells in the circumstances of this case.

GRAPHIC IDENTIFICATION MADE BY THE COMPLAINANT?

Prior to trial, defense counsel moved for suppression of all testimony, including third-party testimony, relating to the photographic identification. A *Wade* hearing was held, following which the trial court denied the motion.

At trial, the complainant testified that she had not been able to positively identify any photograph as that of her assailant. Complainant's daughter testified at trial that she was with her mother at the photographic showing and that her mother had stated that one photograph looked most like the man who assaulted her. Complainant's daughter identified defendant as the man depicted in that photograph.

Officer Phillips, who conducted the photographic showing, testified at trial that complainant viewed some 200 photographs. The officer testified that when complainant came to defendant's photograph she became frightened and stated that the person in the photograph looked exactly like the person who assaulted her.

Defendant argues that this testimony was inadmissible hearsay. MRE 801(d)(1) provides:

"A statement is not hearsay if—

"(1) *Prior statement of witness.* The declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is one of identification of a person made after perceiving him; * * *."

It is not clear whether this rule applies to the testimony of a third party reciting another person's previous out-of-court identification. The Supreme Court in *People v Sanford,* 402 Mich 460; 265 NW2d 1 (1978), discussed the rule but ob-

served that it had been adopted subsequent to the trial in the *Sanford* case. In dicta, the Court split over whether the rule allowed a police officer's description of a witness's out-of-court identification. We recently summarized the *Sanford* Court's discussion in *People v Gwinn,* 111 Mich App 223, 245; 314 NW2d 562 (1981), as follows:

"Justice WILLIAMS, joined by Justices COLEMAN and MOODY, did not apply the rule at all but observed that officers testifying about others' out-of-court identifications were not testifying as to the truth of the identification but to the fact that it was made and to the cricumstances surrounding it. Justice WILLIAMS noted, however, that this testimony may, in some cases, be barred. as improper bolstering. *Id.,* 491. Justice RYAN, joined by Justice FITZGERALD, would apply the evidence rule and permit officers' testimony under it so long as the identifier testified during trial. Justices LEVIN and KAVANAGH would hold, however, that the rule is inapplicable to third parties and applies only to the testimony of the identifier."

Different panels of this Court have expressed disagreement about the holding and application of *Sanford.* In *People v Prophet,* 101 Mich App 618; 300 NW2d 652 (1980), we held that MRE 801(d)(1) does not permit a witness to repeat another person's out-of-court statement of identification. See also *People v Washington,* 84 Mich App 750, 756; 270 NW2d 511 (1978), and *People v Hoerl,* 88 Mich App 693, 702; 278 NW2d 721 (1979).

On the other hand, in *People v Adams,* 92 Mich App 619, 626; 285 NW2d 392 (1979), the Court found that an officer's testimony concerning the complainant's photographic identification of the defendant was arguably inadmissible hearsay under prior Michigan law, but would be admissible under MRE 801(d)(1), citing *Sanford.*

We believe *People v Prophet, supra,* represents the better view. We hold that a third person's testimony regarding prior identification must be limited to relating the circumstances surrounding the identification. *People v Poe,* 388 Mich 611; 202 NW2d 320 (1972). While it was error in this case to allow the officer and complainant's daughter to repeat complainant's statement of identification, we conclude that the error was harmless beyond a reasonable doubt. Even though complainant testified that she made no positive identification at the photographic showing and could not identify defendant at trial, identification of defendant as the perpetrator was adequately established at trial by evidence of his thumbprint on the knife found under complainant's mattress and by his own statement to the police. This Court has consistently found harmless error in the admission of hearsay testimony when the same facts are established by other competent evidence. See *People v Prophet, supra,* 624, and cases cited therein.

We have carefully examined the record and briefs with regard to the final issue raised by defendant and find no reversible error. Defendant was not denied effective assistance of counsel under the standard of *People v Garcia,* 398 Mich 250; 247 NW2d 547 (1976).

Defendant's convictions are affirmed.