PEOPLE v SLATON

Docket No. 66683. Submitted April 9, 1984, at Detroit.—Decided June 18, 1984.

Leander Slaton was convicted of felony murder by a jury in Wayne Circuit Court and was sentenced to life imprisonment, James E. Mies, J. Defendant appeals. *Held:*

1. The trial court did not abuse its discretion in finding that a tape recording made of the victim's telephone call to a 911 operator was relevant to a material issue of fact and therefore was admissible at trial. Furthermore, the trial court did not abuse its discretion in its balancing of the probative value and prejudicial effect of the 911 tape as evidence. Finally, the tape was not inadmissible as hearsay because it qualified for admission into evidence under two exceptions to the hearsay rule, and a proper foundation was laid for the admission of the tape. The tape was properly admitted at trial.

2. The trial court did not err in refusing to allow defense counsel to impeach one of the arresting officers with testimony the officer had given in a prior, unrelated criminal trial.

3. Although the trial court erred in admitting hearsay evidence as to the time the investigating officers received the call from the police dispatcher directing them to go to the victim's residence, the error was harmless because the same facts were shown by other competent evidence.

4. The trial court did not err in admitting defendant's shoes into evidence. An adequate foundation was laid and the trial court did not abuse its discretion in determining that the

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 29 Am Jur 2d, Evidence § 249.

[3] 29 Am Jur 2d, Evidence §§ 253, 260.

[4] 29 Am Jur 2d, Evidence § 436.
Omission or inaudibility of portions of sound recording as affecting its admissibility in evidence. 57 ALR3d 746.

[5] 81 Am Jur 2d, Witnesses §§ 612, 613.
Propriety, in federal court action, of attack on witness' credibility by rebuttal evidence pertaining to cross-examination testimony on collateral matters. 60 ALR Fed 8.

[6] 29 Am Jur 2d, Evidence § 496.

probative value of the evidence outweighed any risks of unfair prejudice to defendant.

Affirmed.

1. EVIDENCE — RELEVANT EVIDENCE.

Evidence is relevant if it has any tendency to make the existence of any fact of consequence to the determination of the action more or less probable than it would be without the evidence (MRE 401).

2. EVIDENCE — ADMISSIBLE EVIDENCE.

All relevant evidence is admissible unless otherwise provided under the constitution or rules of evidence (MRE 402).

3. EVIDENCE — RELEVANT EVIDENCE — EXCLUSION OF EVIDENCE.

Relevant evidence must be excluded if its probative value is substantially outweighed by the risks of unfair prejudice (MRE 403).

4. EVIDENCE — SOUND RECORDINGS — FOUNDATION FOR ADMISSION OF EVIDENCE.

A proper foundation for admission of sound recordings into evidence consists of: (1) a showing that the recording device was capable of taking testimony, (2) a showing that the operator of the device was competent, (3) establishment of the authenticity and correctness of the recording, (4) a showing that changes, additions, or deletions have not been made, (5) a showing of the manner of the preservation of the recording, (6) indentification of the speakers, and (7) a showing that the testimony elicited was voluntarily made without any kind of inducement; the seventh requirement does not apply in a case where the victim of a crime telephones the police or a 911 operator for help because the recorded phone call is not testimony.

5. EVIDENCE — WITNESSES — IMPEACHMENT — COLLATERAL MATTERS — RIGHT TO CONFRONT WITNESSES.

The impeachment of a witness on a collateral matter is within the sound discretion of the trial court, subject only to the defendant's Sixth Amendment right to confront witnesses (US Const, Am VI).

6. EVIDENCE — HEARSAY — HARMLESS ERROR.

The erroneous admission of hearsay testimony is harmless where the same facts are shown by other competent evidence.

*Frank J. Kelley,* Attorney General, *Louis J.*

*Caruso,* Solicitor General, *John D. O'Hair,* Prosecuting Attorney, *Edward Reilly Wilson,* Deputy Chief, Civil and Appeals, and *Larry L. Roberts,* Assistant Prosecuting Attorney, for the people.

State Appellate Defender (by *Herb Jordan),* for defendant on appeal.

Before: Hood, P.J., and M. J. Kelly and R. C. Livo,* JJ.

M. J. Kelly, J. Following a mistrial, defendant was convicted by a jury of felony murder, MCL 750.316; MSA 28.548, in connection with the death of 70-year-old Frederick Trombley, who was found beaten and unconscious in his home on April 30, 1981. Trombley died on July 2, 1981, without regaining consciousness. Defendant was sentenced to life imprisonment and he now appeals his conviction as of right. We affirm.

Rosilind Lee, a 911 operator, testified that on April 30, 1981, she received a call from a man subsequently identified as Mr. Trombley reporting that some person or persons had broken into the basement of his home at 115 Tuxedo, Highland Park, and were attempting to break down the door which separated him from the basement. Lee requested police assistance and spoke to the caller for approximately five minutes when she heard the phone drop. Lee testified that she then heard a loud banging noise and the caller yelling and two voices ordering the caller on the floor, repeatedly demanding money. Near the end of the call, Ms. Lee heard a crashing sound and, about five minutes later, heard a male voice yell "freeze". The call began at 10:43 p.m. and ended at 11:12 p.m.

* Circuit judge, sitting on the Court of Appeals by assignment.

Highland Park Police Officer Michael Gardenhire testified that on April 30, 1981, between 10:30 p.m. and 10:35 p.m., he received a call to go to 115 Tuxedo. Upon arriving at the scene, Officer Gardenhire checked the front door and windows on the front and side of the house and found them locked. He received no response when he knocked on the front door but observed some movement through a window. His partner, Officer Morris Cotton, was at the same time investigating the rear of the house when he observed a man exit from one of the windows and begin running down an alley. Officer Gardenhire chased the man until he recognized him as Shawn Bigham and then returned to the house. Backup officers arrived and Officer Gardenhire kicked in the front door, observing as he entered the house some movement behind the den door. He discovered defendant hiding in the den and placed him under arrest. He then discovered Mr. Trombley lying on his stomach on the floor with his hands bound and his mouth gagged. Mr. Trombley's pants pockets were turned out and he was suffering from injuries to his head. The house was in a state of disarray.

Defendant introduced testimony attempting to establish that he was not present when the beating occurred but arrived at the house shortly thereafter. Three alibi witnesses testified that on the evening of April 30, 1981, Shawn Bigham showed up at defendant's home, which was located less than one block away from Mr. Trombley's home, and persuaded defendant to accompany him to a house where they were to meet some women. According to defendant's version of the incident, he was then led by Bigham to Mr. Trombley's home where Mr. Trombley already lay injured on the floor.

I

At trial, the prosecutor sought to introduce into evidence a tape of the entire recording of Mr. Trombley's 911 telephone call. Defense counsel objected on the grounds that the tape was inadmissible hearsay and that its prejudicial effect far outweighed any probative value it may have had. The trial court excluded the portion of the tape containing Lee's conversations with her supervisor but admitted the remaining portions of the tape under the excited utterance and present sense impression exceptions to the hearsay rule. On appeal, defendant argues that the admission of portions of the 911 tape constitutes error because the tape was irrelevant to the only disputed issue at trial, the identification of defendant as one of the perpetrators. Defendant alternately argues that even if the tape was properly admitted as relevant evidence, its prejudicial effect so seriously outweighed its probative value as to constitute error. Defendant argues that the probative value of the tape is significantly reduced by the availability and presentation of Lee's in-court testimony.

We first consider defendant's relevancy challenge to the admission of the 911 tape. Evidence is relevant if it has any tendency to make the existence of any fact of consequence to the determination of the action more or less probable than it would be without the evidence. MRE 401. All relevant evidence is admissible unless otherwise provided under the constitution or rules of evidence. MRE 402; *People v Prast (On Rehearing)*, 114 Mich App 469, 489; 319 NW2d 627 (1982).

We believe that the edited 911 tape was probative of at least two issues in this case. First, the tape tended to prove that Mr. Trombley's fatal injuries were inflicted by the perpetrators of the

breaking and entering. Second, and perhaps more importantly, the tape is probative of the credibility of defendant's story regarding his limited involvement in the incident. Given the testimony of defendant's alibi witnesses, a critical issue is whether defendant had the opportunity to enter the Trombley house unobserved after Shawn Bigham and some unidentified person had inflicted the injuries upon Mr. Trombley and departed.

The 911 call began at 10:43 p.m. The tape was cut off at trial at a point that would have been approximately 10:48 p.m. or 10:49 p.m. on April 30, 1981. As of that cutoff point, the sound of only one entry is heard. According to Officer Cotton, he and Gardenhire arrived at the Trombley house at 10:50 p.m., following which Officer Cotton was at all times positioned at the rear of the house. He saw no one enter or even walk near the house during that time. Officer Gardenhire was positioned at the front of the house until he chased Shawn Bigham down the alley. After this brief absence he returned to the front of the house and did not see anyone enter or leave. The officers remained outside the house until they broke down the front door and entered. The portion of the tape admitted at trial begins again just before the officers' entry. Thus, the combination of the tape and the officers' testimony tends to prove that no one entered the Trombley house after the 911 call was placed and before the officers' entry. We find no abuse of discretion in the trial court's threshold finding that the tape was relevant to a material issue of fact and therefore admissible at trial. *People v Howard,* 391 Mich 597, 603-605; 218 NW2d 20 (1974).

However, even relevant evidence must be excluded if its probative value is substantially out-

weighed by the risks of unfair prejudice. MRE 403. Defendant in this case alternatively argues that the edited tape should have been excluded as unfairly prejudicial and that failure to do so constitutes error. We have already described the highly probative nature of the admitted portions of the tape. Our inquiry now is whether the trial court abused its discretion in concluding that the probative value of the tape outweighed its prejudicial effect.

Included in the edited portions of the 911 tape heard by the jury were Mr. Trombley's calls for help and pleas not to be hurt, followed by his muffled moans. We agree with defendant that these sounds were likely to elicit an emotional response from the jury. We do not, however, agree that the effect of these sounds upon the jury was so prejudicial to the issue of defendant's guilt or innocence as to require exclusion of this otherwise highly probative evidence. Defendant's voice was not identified as one of the voices on the tape, leaving the question of defendant's involvement in the crime to be decided in light of other evidence. We cannot say that the trial court abused its discretion in its balancing of the probative value and prejudicial effect of the 911 tape as evidence.

Defendant further argues that the edited 911 tape should have been excluded as inadmissible hearsay. MRE 802. We disagree. Mr. Trombley's statements to Ms. Lee informing her that some person or persons had broken into his basement and were trying to break down the door separating him from the basement as he spoke described an event as he was perceiving that event and were therefore admissible as present sense impressions under MRE 803(1). Moreover, Trombley's statements related to a startling event and were made

while under the stress or emotional shock of that event and were therefore also admissible as an excited utterance under MRE 803(2). Similarly, Ms. Lee's statements to Mr. Trombley related to a startling event made while she was under the stress of that event and were also admissible under MRE 803(2). See *Hewitt v Grand Trunk Western R Co,* 123 Mich App 309; 333 NW2d 264 (1983). The background noises on the tape are not inadmissible hearsay as they are not statements.

We finally note that the admission of sound recordings in general must be supported by a proper foundation. The requirements for a proper foundation are:

" '(1) a showing that the recording device was capable of taking testimony, (2) a showing that the operator of the device was competent, (3) establishment of the authenticity and correctness of the recording, (4) a showing that changes, additions, or deletions have not been made, (5) a showing of the manner of the preservation of the recording, (6) identification of the speakers, and (7) a showing that the testimony elicited was voluntarily made without any kind of inducement.' " *People v Taylor,* 18 Mich App 381, 383-384; 171 NW2d 219 (1969), aff'd 386 Mich 204; 191 NW2d 310 (1971), citing 58 ALR2d 1024, 1027.

Each of the seven requirements must be met in any case in which all apply though the seventh, the "voluntary testimony" requirement, does not apply where the victim of a crime telephones the police or, as in this case, the 911 operator for help because the recorded phone call is not "testimony". *People v Parker,* 76 Mich App 432, 443-444, fn 6; 257 NW2d 109 (1977).

The prosecutor in this case adequately established the applicable foundation requirements in introducing evidence of the 911 tape. Jeanne Den-

nis, a 911 operator and administrative clerk for the Communications Operations Section of the Detroit Police Department, testified that the machine which recorded Mr. Trombley's call automatically records all incoming telephone calls by means of a direct connection between the telephones and the recording machine. She had encountered no difficulty with the recorder on the day of the crime. Dennis further described how the tape which was introduced into evidence was prepared from a master multi-track tape and then labeled by her and stored at the Communications Section. No changes, additions or deletions were made, except that the time which is simultaneously taped on another track of the same master tape was added to the copy. The copy was then placed on hold for the Highland Park Police and transferred from the Communications Section by Officer Michael Volney to Detective Donald Roberts, who kept it in his possession until it was presented in court. Lee identified her voice on the tape. Doris Pollard testified that she had spoken to Mr. Trombley approximately two to three times a day on the telephone every day over the two years preceding his death and identified his voice as the caller on the tape.

We conclude that the edited 911 tape was properly admitted at defendant's trial and we find no error.

II

Defendant also alleges error in the trial court's refusal to allow defense counsel to impeach Officer Gardenhire with prior in-court testimony. Apparently, defense counsel had previously represented another defendant in an unrelated criminal trial at which Officer Gardenhire had misidentified

someone as the driver of a motor vehicle. Defense counsel attempted to cross-examine Officer Gardenhire regarding the misidentification, but the trial court sustained the prosecutor's objection.

The impeachment of a witness on a collateral matter is within the sound discretion of the trial court, *People v McConnell,* 124 Mich App 672, 682-683; 335 NW2d 226 (1983), subject only to the defendant's Sixth Amendment right to confront witnesses. *People v Partee,* 130 Mich App 119, 125; 342 NW2d 903 (1983). We find no abuse of discretion on the part of the trial court in this case in excluding for impeachment purposes Officer Gardenhire's prior testimony in an unrelated case. Nor do we find that defendant's right of confrontation required the introduction of that evidence.

Defendant sought to impeach Officer Gardenhire because Gardenhire had testified that, when he first entered the Trombley home, he observed defendant "hiding" behind the den door. In his testimony at the preliminary examination and at the mistrial, Gardenhire had testified that defendant was walking toward him from the back room when Gardenhire entered the home. Defense counsel was allowed to impeach Gardenhire with the use of this earlier testimony. In fact defense counsel's cross-examination of Gardenhire covers 71 pages of transcript and we find it difficult to conclude that defendant was denied any meaningful right of confrontation. In any event, whether defendant was hiding behind the den door or walking toward the officers when the police entered is not material to the issue of defendant's guilt or innocence in this case.

### III

Defendant next argues that error occurred when

the trial court permitted Officer Gardenhire to testify that he knew the time he received the Trombley radio call because a dispatcher had informed him it was 10:35 p.m. Officer Gardenhire's testimony was in response to the prosecutor's inquiry regarding his certainty of the time the call was received. Inasmuch as Gardenhire repeated an out-of-court statement which was offered to prove the truth of the matter asserted, we find the statement was hearsay and inadmissible under MRE 802.

However, the erroneous admission of hearsay testimony is harmless where the same facts are shown by other competent evidence. *People v Price,* 112 Mich App 791, 803; 317 NW2d 249 (1982), *lv den* 414 Mich 946 (1982); *People v Prophet,* 101 Mich App 618, 624; 300 NW2d 652 (1980). In this case, Officer Gardenhire also testified that he personally recalled the time that he received the message to go to the Trombley house because he had looked at his watch after receiving the dispatch. The 911 tape indicates that the call came into the operator at 10:43 p.m. and that the operator initiated the ticket to the dispatcher 10 to 15 seconds later. The importance of the time the call was received relates to the time the police arrived at Trombley's house and both Officer Cotton and Officer Gardenhire testified that they arrived at the house at approximately 10:50 p.m. Because other competent evidence clearly establishes the officers' arrival time, the admission of the hearsay statement is harmless beyond a reasonable doubt.

IV

Defendant finally argues that the trial court erred in admitting into evidence the shoes that

defendant was wearing at the time of his arrest. Defendant alleges that the prosecutor failed to establish a proper foundation and that, even if a foundation had been laid, the probative value of the shoes was substantially outweighed by the prejudicial effect of the introduction of this evidence.

The requirements for establishing an adequate foundation prior to the admission of real evidence have been articulated by this Court in *People v Beamon,* 50 Mich App 395, 398-399; 213 NW2d 314 (1973). We have carefully reviewed the record in the instant case and conclude that the prosecution presented sufficient evidence on the *Beamon* factors to establish an adequate foundation for the admission of defendant's shoes. Defendant was placed in custody immediately upon being discovered in Trombley's house and remained in custody when, approximately three days after his arrest, Officer Ray Buckner typed up a search warrant and removed defendant's shoes from his feet, placed an evidence tag upon them, and placed them in the evidence locker. Detective Roberts received the shoes from Officer Buckner and took them to the Serology Department of the Detroit Police Department. Employees of the Serology Department then conducted tests upon the shoes. Two of the tests results, if read together, revealed that human blood was present on the shoes though no blood type could be identified.

We do not believe that the trial court abused its discretion in determining that the probative value of the shoes outweighed any risks of unfair prejudice to the defendant. The evidence was probative of defendant's participation in the beating which eventually resulted in Mr. Trombley's death. Testimony revealed that Trombley sustained multiple

bruises and lacerations to the head and was surrounded by a pool of blood when discovered by the police. Two factors in particular persuade us that the prejudicial effect of the admission of this evidence does not outweigh its probative value. First, the expert witnesses who conducted the tests and who testified at trial did not attempt to connect the blood on defendant's shoes with the blood type of Mr. Trombley nor did they attempt to establish the length of time the blood had been on defendant's shoes. Second, the presence of blood on defendant's shoes is entirely consistent with his defense of limited participation since testimony revealed that defendant had admitted to stumbling over the victim's body prior to the police entry. We find no error in the trial court's admission of defendant's shoes at trial.

Affirmed.