TZIAHANAS v DEPARTMENT OF LICENSING AND
REGULATION, BOARD OF PSYCHOLOGY

Docket No. 76571. Submitted January 24, 1985, at Lansing.—Decided
May 20, 1985.

Petitioner, Thomas Tziahanas, applied to respondent, Michigan
Department of Licensing and Regulation, Board of Psychology,
for a license to practice psychology. A hearing examiner con-
cluded that petitioner failed to meet the requirements for
licensure. The Board of Psychology then adopted the hearing
examiner's opinion. A petition for judicial review was thereaf-
ter filed in the Washtenaw Circuit Court. The circuit court
affirmed, William F. Ager, Jr., J. Petitioner appeals. *Held:*

1. The hearing examiner erroneously concluded that peti-
tioner had not met "any" of the seven internship reuirements.
Petitioner submitted evidence as to each of the requirements.
Such evidence was not controverted. The hearing examiner's
conclusory statement is insufficient for a Court of Appeals
review of the matter. The Court of Appeals stated that this
alone would require a remand, but concluded, instead, that the
board's decision should be reversed outright and petitioner's
application for licensure granted.

2. The board's expert witness rejected petitioner's qualifica-
tions based on the witness's interpretation of the board's policy,
an interpretation which is not supported by the administrative
rule itself. Nowhere in the rule is it required that the intern-
ship be fulfilled only in a program labeled as an "internship".

3. If the board promulgates a rule, a reasonable interpreta-
tion of which allows for alternative ways to fulfill the require-
ment, it cannot then close the door in the face of an applicant
based on an unreasonably restrictive interpretation of the same
rule applied on an ad hoc basis to the applicant after he has
gained experience which reasonably appears to meet the man-
dates of the rule.

4. The board erred by denying petitioner's application. Peti-

REFERENCES FOR POINTS IN HEADNOTES
[1] 61 Am Jur 2d, Physicians, Surgeons, and Other Healers § 27.
[2] 61 Am Jur 2d, Physicians, Surgeons, and Other Healers § 28.
[3] 2 Am Jur 2d, Administrative Law § 412.

tioner fulfilled the educational and work experience require-
ments and submitted unrebutted evidence that he had fulfilled
the internship requirements as defined in the Administrative
Code.

Reversed and remanded to the Board of Psychology with
direction to award petitioner a license to practice psychology.

D. E. HOLBROOK, JR., J., concurred solely for the reason that
petitioner's faculty advisor testified that petitioner's qualifica-
tions meet those required for licensing today.

1. LICENSES — BOARD OF PSYCHOLOGY.

The Board of Psychology is empowered to promulgate rules for
the licensure of psychologists (MCL 333.18223[1]; MSA
14.15[18223][1]).

2. LICENSES — BOARD OF PSYCHOLOGY — PSYCHOLOGISTS — INTERN-
SHIPS — ADMINISTRATIVE CODE.

The Board of Psychology, having promulgated a rule regarding
the internship requirement which must be met by an applicant
for licensure as a psychologist, a reasonable interpretation of
which allows for alternative ways to fulfill the requirement,
cannot then close the door in the face of an applicant based on
an unreasonably restrictive interpretation of the same rule
applied on an ad hoc basis to the applicant after he has gained
experience which reasonably appears to meet the mandates of
the rule (1979 AC, R 338.2506).

3. ADMINISTRATIVE LAW — ADMINISTRATIVE HEARINGS.

Adminsitrative hearings are to be conducted in an impartial
manner (MCL 24.279; MSA 3.560[179]).

*Garris, Garris & Garris, P.C.* (by *Jack J. Garris*
and *Steven Z. Garris),* for petitioner.

*Frank J. Kelley,* Attorney General, *Louis J.
Caruso,* Solicitor General, and *Howard C. Mardero-
sian,* Assistant Attorney General, for respondent.

Before: SHEPHERD, P.J., and D. E. HOLBROOK, JR.,
and M. F. SAPALA,* JJ.

SHEPHERD, P.J. Petitioner appeals as of right

* Recorder's Court judge, sitting on the Court of Appeals by assign-
ment.

from a circuit court order affirming the denial by respondent of petitioner's application for a license to practice psychology. We reverse.

Petitioner applied for a license on July 30, 1979. A hearing was held on November 24, 1980. In an opinion dated August 19, 1981, the hearing examiner concluded that petitioner had failed to meet the "training" or internship requirements contained in 1979 AC, R 338.2506 (Rule 6):

"(b) Training. An applicant shall have participated in an internship program which complies with the following:

"(i) The internship provides the applicant with substantial opportunities to carry out major professional functions in the context of appropriate supervisory support.

"(ii) The internship should be an integrated part of the doctoral degree program; however, a postdoctoral internship may be recognized by the board if it meets the other requirements set forth in this subdivision.

"(iii) The internship takes place in an organized health care setting, as defnded in R 338.2501(1)(b), or other arrangement receiving approval of the board.

"(iv) The internship requires the applicant to work not less than 20 hours per week in the internship program.

"(v) The internship requires not less than 2,000 clock hours of psychological work.

"(vi) The applicant is supervised by a psychologist who is licensed in Michigan or who meets the qualifications for licensure in Michigan.

"(vii) The internship is separate and distinct from the applicant's required experience in the practice of psychology."[1]

1979 AC, R 338.2501(1)(b) defines "organized health care setting" as follows:

[1] This rule was amended in 1982, but the changes are not significant to this appeal. See, 1982 AACS, R 338.2506.

" 'Organized health care setting' means an organized governmental entity, nonprofit organization, or private agency, institution, or organization engaged in the delivery of health care services which provides an opportunity for continuous professional interaction and collaboration with other disciplines, an opportunity to utilize a variety of theories, and an opportunity to work with a broad range of populations and techniques."

In the summers of 1962 and 1963, petitioner worked a total of 560 hours at the University of Michigan Medical Center under the supervision of psychologist Dr. Ralph Gibson. During the summer of 1965, petitioner worked an additional 320 hours at the University of Michigan High School under the supervision of Dr. Warren A. Ketcham. During the school term, petitioner was employed by the Ann Arbor school system as a teacher of emotionally disturbed children. Petitioner continues to work for the Ann Arbor school system as a learning-disability consultant and school psychologist.

Petitioner submitted evidence of other experiences during the 1965-1970 school years to fulfill the internship requirement. Dr. William C. Morse, Chairman of the Department of Educational Psychology at the University of Michigan, testified that during those years petitioner worked on a new type of program to deliver mental health services to disturbed children and their families. However, the board's expert witness, herself a member of the defendant board, stated that work performed in the public school system did not fulfill the internship requirements. The hearing examiner accepted the 880 hours of work performed with Drs. Gibson and Ketcham as part of the internship, and acknowledged that petitioner met the separate educational and work experience requirements for licensure. R 338.2506. The hearing examiner concluded that petitioner's work

during the 1965-1970 school years failed "to meet *any* of the requirements of Rule 6(b)(i) through (vii)", (emphasis in original). The Board of Psychology adopted the hearing examiner's opinion. The circuit court affirmed. This appeal followed.

Petitioner argues that he presented uncontroverted evidence of compliance with each of the board's internship requirements as stated in Rule 6. He further argues that the board's expert witness did not provide any testimonial evidence, but merely propounded a policy view of what sort of training meets the internship requirements. Thus, petitioner urges, the board did not give his application the individualized consideration it deserved. We agree with petitioner's argument.

The Legislature has empowered the board to promulgate rules for licensure of psychologists:

"The board shall promulgate rules requiring that an individual granted a license under this part * * * shall have been granted a doctoral degree in psychology, or a doctoral degree in a closely related field, from a regionally accredited or other college, university, or institution approved by the board, which included education and training appropriate to the practice of psychology, and shall have not less than 2 years postdoctoral experience in the practice of psychology in an organized health care setting or other arrangement, as established by the board." MCL 333.18223(1); MSA 14.15(18223)(1).

It was pursuant to this statutory mandate that the board promulgated the internship requirements contained in Rule 6. This case presents no issue as to the validity of these requirements. Rather, the sole issue is whether the record contains "competent, material and substantial evidence" that petitioner did not fulfill these requirements. MCL 24.306(1)(d); MSA 3.560(206)(1)(d).

The hearing examiner concluded that petitioner

had not met "any" of the seven requirements. We disagree. Petitioner submitted evidence as to each of the seven requirements:

(i) Petitioner testified that he worked from 1965 to 1970 under the supervision of Dr. Morse. Dr. Morse testified regarding the nature of petitioner's work during this period. There was no evidence that petitioner's work did not encompass "major professional functions", R 338.2506(b)(i), and from Dr. Morse's testimony, there appears to be no doubt that it did. See, also, MCL 333.18201(1)(b); MSA 14.15(18201)(1)(b).

(ii) Petitioner's work in the school system related closely to his doctoral degree program. Petitioner was awarded his doctorate in 1971 in educational psychology, with a specialty in emotionally disturbed children. His doctoral supervisor was the same Dr. Morse who supervised petitioner at work.

(iii) A school system, to the extent that psychological services are rendered there, meets the broad definition of "organized health care setting". R 338.2501(1)(b). The record contains a letter from an Ann Arbor school official, describing the school system as "a health care agency for diagnosis and treatment of children with learning and behavioral problems". Petitioner testified that he interacted and collaborated with members of other disciplines, including social workers and speech therapists.

(iv) Petitioner worked the requisite 20 hours per week.

(v) During the period in question, petitioner worked far in excess of the 2,000-hour requirement.

(vi) Petitioner's supervisor, Dr. Morse, is and was a licensed psychologist.

(vii) Although petitioner stated in his written application that he was under no supervision during his employment, he clarified this statement at the hearing. After receiving his doctorate in 1971, he was not under the supervision that he had been under previously. He began to supervise trainees in the area of learning disabilities. Due to the changing nature and conditions of petitioner's work, his post-1971 work experience was

"separate and distinct" from the hours which petitioner submitted in fulfillment of the internship requirement. R 338.2506(b)(vii).

In view of the above, none of which is controverted in the record, we cannot discern what was in the hearing examiner's mind when she rejected petitioner's application with the blanket statement that he had failed to meet "any" of the requirements. Obviously, without further explanation as to each of the requirements, such a conclusory statement is insufficient for our review of this matter. MCL 24.285; MSA 3.560(185); *Viculin v Dep't of Civil Service,* 386 Mich 375, 404-405; 192 NW2d 449 (1971); *Luther v Alpena Public Schools,* 62 Mich App 32, 37; 233 NW2d 173 (1975). This alone would require a remand but for our conclusion that the board's decision should be reversed outright and petitioner's application for licensure granted. MCL 24.306(2); MSA 3.560(206)(2).

In the absence of clearly articulated reasons, it is left to the Attorney General on appeal to advance a factual basis for the board's decision. Respondent relies heavily on the testimony of its expert witness. This witness opined that petitioner essentially attempted to use additional work experience to fulfill the internship requirement in contravention of the requirement that the internship be "separate and distinct" from work experience. R 338.2506(b)(vii). The witness felt that the internship requirement is "usually" fulfilled in a facility with an "internship" program, formally designated as such, "with close [,] intent *(sic)* supervision". According to the witness, petitioner's experience during the years 1965 to 1970 was not separate and distinct from his work experience, but appeared to be "the same position that he's carried since 1962".

We agree with petitioner's argument that the board's expert witness rejected his qualifications based on the witness's interpretation of the board's policy, an interpretation which is not supported by the rule itself. *Garchow v Dep't of Civil Service,* 88 Mich App 384, 392; 276 NW2d 597 (1979). Nowhere in Rule 6 is it required that the internship be fulfilled only in a program labeled as an "internship". Rather, the rule defines internship in terms of type and amount of work performed. This interpretation of the rule is supported by the hearing examiner's acceptance of petitioner's 880 hours of summer work as the functional equivalent of internship hours even though these summer programs were not part of a formal internship.

Petitioner submitted evidence on each of the requirements of the rule. We do not mean to say that the board could not promulgate a rule requiring that the internship can only be accomplished in a program designated as an "internship". We only hold that if the board promulgates a rule, a reasonable interpretation of which allows for alternative ways to fulfill the requirement, it cannot then close the door in the face of an applicant based on an unreasonably restrictive interpretation of the same rule applied on an ad hoc basis to the applicant after he has gained experience which reasonably appears to meet the mandates of the rule. Otherwise, the applicant is left "unprotected from uncontrolled, arbitrary power in the hands of administrative officials". *Dep't of Natural Resources v Seaman,* 396 Mich 299, 308-309; 240 NW2d 206 (1976). See, also, *Wong v Riverview,* 126 Mich App 589, 593; 337 NW2d 589 (1983).

Moreover, the board's witness ignored the qualitative differences between petitioner's work in the school system before and after 1971. The mere fact

that petitioner held the "same position" he did before does nothing to counter his testimony that his work was materially different during these two periods. Nor do we find anything in the rule which forbids consideration of a given experience as an "internship" simply because the applicant later continued working for the same employer, even though with less or no supervision.

The instant case illustrates the danger of arbitrary action by an administrative agency. We find it difficult to believe that petitioner had a fair hearing on his application. Faced with the statement of board policy (brought to her attention through the board member's testimony), the hearing examiner had little to decide.

Petitioner does not challenge the procedure employed here, *i.e.,* the witness whose testimony "supports" the board's decision being a member of the board. The Michigan Administrative Procedures Act provides that "[h]earings shall be conducted in an impartial manner". MCL 24.279; MSA 3.560(179). Had the issue been addressed, we would be inclined to rule that a hearing is not impartial where an expert witness for the board is a board member, one of whose functions is to pass upon the credibility and accuracy of expert testimony.

In summary, petitioner submitted unrebutted evidence that he had fulfilled the internship requirements as defined in R 338.2506. Since he had also fulfilled the educational and work experience requirements, the board erred by denying petitioner's application. We express no opinion regarding the board's authority to fashion a more restrictive policy regarding internships, but only hold that such a policy cannot be applied to the detriment of an applicant who is well qualified according to the terms of a promulgated rule.

Reversed and remanded to the Board of Psychology with direction to award petitioner a license to practice psychology.

M. F. SAPALA, J., concurred.

D. E. HOLBROOK, JR., J. *(concurring)*. I concur solely for the reason that petitioner's faculty advisor, the eminent Dr. Morse, testified at his deposition that petitioner's qualifications meet those required for licensing today. Absent such testimony I would harbour grave doubts, from the nebulous facts presented, the petitioner has met the necessary qualifications for licensing.