*In re* FREIBURGER

Docket No. 87100. Submitted April 1, 1986, at Detroit. Decided July 8, 1986.

The Department of Social Services filed a petition in Charlevoix Probate Court alleging that Hiram Freiburger had sexually abused his daughter, Heidi, and seeking termination of Mr. Freiburger's parental rights over Heidi. The parties stipulated that the testimony of Heidi Freiburger could be taken by video deposition with the questioning of the child to be performed by Mary Ann Tuschak, a psychiatric social worker who had been working with Heidi. Following a jury trial at which it was determined that the court should take jurisdiction over Heidi, the court, John W. Unger, J., ordered that the parental rights of Hiram Freiburger be terminated as to Heidi. Hiram Freiburger appealed by leave granted. *Held:*

1. The hearsay exception for statements made for purposes of medical treatment or diagnosis should not be read so narrowly as to disqualify statements Heidi made to Tuschak merely because Tuschak was not a medical doctor. Psychiatric treatment is medical treatment for purposes of the exception to the hearsay rule.

2. Tuschak's testimony regarding the statements which Heidi had made to her was admissible under the hearsay exception for statements made for purposes of medical treatment or diagnosis since the statements were made by Heidi for the purposes of medical treatment or medical diagnosis in connection with treatment.

3. Testimony by police officers as to claims made against Hiram Freiburger by other people was erroneously admitted, but the error does not require reversal. The preponderance of

REFERENCES

Am Jur 2d, Appeal and Error §§ 545 *et seq.*

Am Jur 2d, Evidence §§ 159, 493-497, 1090, 1094, 1103.

Am Jur 2d, Parent and Child §§ 8-25.

Validity, construction, and application of statute limiting physician-patient privilege in judicial proceedings relating to child abuse or neglect. 44 ALR4th 649.

Validity of state statute providing for termination of parental rights. 22 ALR4th 774.

evidence standard of proof applicable to the adjudicative phase of the proceedings was more than met without consideration of the erroneously admitted evidence.

4. The stipulation that Heidi's testimony would be taken by video was binding and the court did not err in permitting the video deposition to be shown to the jury or in ruling that the video tape would be Heidi's only testimony.

5. Respondent waived his right to cross-examine Heidi by stipulating to the video deposition.

6. The fact that Heidi was not put under oath before the video deposition was made does not make the showing of the video deposition improper. No objection was made at the time the deposition was taken.

7. The fact that the Saginaw Circuit Court had prior continuing jurisdiction over Heidi because of her parents' divorce and the fact that the Saginaw County Prosecuting Attorney was not notified of the petitions filed in this case does not prevent the Charlevoix Probate Court from exercising jurisdiction to enter a permanent order terminating Hiram Freiburger's parental rights over Heidi.

Affirmed.

E. E. Borradaile, J., dissented as to that part of the majority opinion which held that testimony concerning statements Heidi made to Tuschak could be admitted under the hearsay exception for statements made for the purpose of medical treatment or medical diagnosis in connection with medical treatment and that testimony as to Heidi's actions using anatomically correct dolls could be admitted. He would remand the case to the probate court for retrial and prohibit the admission of statements made by Heidi to Tuschak and require that a foundation be laid showing that the use of anatomically correct dolls has general acceptance within the scientific community before any testimony could be had relating to the use of the dolls.

## OPINION OF THE COURT

1. EVIDENCE — HEARSAY.

Hearsay is a statement, either verbal or nonverbal, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted; a nonverbal statement is conduct of a person which is intended by him to be an assertion (MRE 801[a], [c]).

2. EVIDENCE — HEARSAY.

Hearsay evidence is generally inadmissible; to be admissible, it must fall within a recognized exception to the rule prohibiting admission of hearsay (MRE 802).

3. EVIDENCE — HEARSAY — EXCEPTIONS — MEDICAL TREATMENT OR DIAGNOSIS.

Testimony as to statements made by a child to a psychiatric social worker in connection with treatment or diagnosis may be admissible under the hearsay exception for statements made for purposes of medical treatment or medical diagnosis in connection with treatment; the exception is not restricted to statements made only to medical doctors (MRE 803[4]).

4. EVIDENCE — HEARSAY — PRESERVING QUESTION — APPEAL.

The failure to object to the admission of hearsay evidence at trial precludes review of the issue on appeal absent manifest injustice.

5. EVIDENCE — HEARSAY WITHIN HEARSAY.

A hearsay statement within hearsay must itself conform with an exception to the hearsay rule to be admissible (MRE 805).

6. PARENT AND CHILD — TERMINATION OF PARENTAL RIGHTS — EVIDENCE.

Only competent, relevant, and material evidence may be admitted at the adjudicative phase of a proceeding to terminate parental rights (MCR 5.908[C][1]).

7. ACTIONS — PARTIES — AGREEMENTS.

An agreement or consent between the parties or their attorneys respecting the proceedings in an action is not binding unless it was made in open court, or unless evidence of the agreement is in writing subscribed by the party against whom the agreement is offered or by the party's attorney.

8. EVIDENCE — STIPULATIONS — JUDICIAL CONSTRUCTION.

Stipulations relating to evidence should generally be fairly and liberally construed, and the parties are bound thereby.

9. STIPULATIONS — JUDICIAL CONSTRUCTION — WAIVER OF RIGHTS.

The language of a stipulation will not be construed so as to give the effect of a waiver of a right not plainly intended to be relinquished.

10. EVIDENCE — DEPOSITIONS — OATH OR AFFIRMATION — PRESERVING QUESTION.

Errors or irregularities in the manner of taking a deposition concerning the oath or affirmation are waived unless a seasonable objection is made at the time the deposition is taken (MCR 2.308[C][3][b]).

11. Evidence — Depositions.
    A deposition may be taken in any manner stipulated to by the parties (MCR 2.302[F]).

12. Courts — Probate Court — Jurisdiction.
    A probate court prior to March 1, 1985, had jurisdiction to terminate parental rights where the child involved was under prior continuing jurisdiction of a circuit court because of the divorce of the child's parents although the prosecuting attorney of the county where the divorce occurred was not notified of the probate court proceedings (MCL 712A.2[b][2]; MSA 27.3178[598.2][b][2]).

Partial Concurrence and Partial Dissent by E. E. Borradaile, J.

13. Evidence — Hearsay — Medical Treatment or Diagnosis.
    *The hearsay exception for statements made for purposes of medical treatment or medical diagnosis in connection with medical treatment does not apply to hearsay statements made to a psychiatric social worker (MRE 803[4]).*

14. Parent and Child — Termination of Parental Rights — Burden of Proof.
    *The state, to terminate the rights of a parent in a child, must prove by clear and convincing evidence that termination is warranted.*

15. Evidence — Parent and Child — Termination of Parental Rights — Sexual Abuse — Anatomically Correct Dolls.
    *The use of anatomically correct dolls by a child in a proceeding to terminate the rights of the child's parent over her for alleged sexual abuse should not be permitted without a foundation first being laid to show that the use of the dolls has achieved general scientific acceptance.*

*Kraag C. Lieberman,* for petitioner.

*John R. Michael,* for respondent.

Before: Cynar, P.J., and Wahls and E. E. Borradaile,* JJ.

Per Curiam. Respondent Hiram Freiburger appeals by leave granted from the termination of his

---

* Circuit judge, sitting on the Court of Appeals by assignment.

parental rights to his daughter, Heidi. We find no error requiring reversal and affirm.

I

In the instant case Mary Ann Tuschak, a psychiatric social worker, testified about her sessions with Heidi Freiburger. Respondent asserts that much of Tuschak's testimony was inadmissible hearsay.

Hearsay is defined as "a statement, other than one made by [a] declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." MRE 801(c). A statement may be verbal or nonverbal; a nonverbal statement is defined as the conduct of a person which is intended by him as an assertion. MRE 801(a). Generally, hearsay is inadmissible. To be admissible hearsay evidence must fall within a recognized exception to the rule prohibiting admission of hearsay. MRE 802.

Tuschak testified that at her fifth session with Heidi, Heidi told Tuschak to sit down and watch her show how her daddy "poked and gave her shots." Heidi then lay down on the floor and placed a male anatomically correct doll on top of her stomach, near the genital area, with the penis of the doll between her legs. This nonverbal conduct was clearly a statement since it was apparently intended by Heidi as an assertion; it was an illustration of what respondent allegedly had done. The testimony was offered in court to prove the truth of the matter asserted, namely that respondent had sexually abused Heidi. Therefore, this nonverbal conduct was, by definition, hearsay.

Tuschak also testified that Heidi illustrated the sexual abuse for Lenore Landon using two anatom-

ically correct dolls. Again, these nonverbal statements were within the hearsay definition.

In addition, Tuschak stated that when Heidi was asked whether she had been hurt in a sexual way by anyone else Heidi replied, "No, just daddy." This statement also fits the hearsay definition since it was made out of court (during a session with Tuschak), and was offered in court to prove the truth of the matter asserted, namely that respondent had sexually abused Heidi.

Tuschak's testimony regarding Heidi's "statements" (verbal and nonverbal) must come within a recognized hearsay exception to have been properly admitted here. At trial, after an objection by respondent's attorney, the probate court ruled that the statements came within MRE 803(4), the exception for statements made for purposes of medical treatment or diagnosis.

MRE 803 provides:

> The following are not excluded by the hearsay rule, even though the declarant is available as a witness: ·
>
> \* \* \*
>
> (4) *Statements Made for Purposes of Medical Treatment or Medical Diagnosis in Connection With Treatment.* Statements made for purposes of medical treatment or medical diagnosis in connection with treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably necessary to such diagnosis and treatment.

Respondent argues that the statements in the instant case do not come within this exception for two reasons.

First, respondent asserts, the exception does not apply because Tuschak was not a physician. A

similar argument proved unpersuasive in the recent case of *Galli v Reutter*, 148 Mich App 313; 384 NW2d 43 (1985). In *Galli*, this Court held that MRE 803(4) would not be read so narrowly so as to disqualify statements made to a physical therapist merely because the therapist was not a medical doctor. In addition, the federal Advisory Committee's Note to FRE 803(4) states:

> Under the exception the statement need not have been made to a physician. Statements to hospital attendants, ambulance drivers, or even members of the family might be included.

We also note that the rule itself does not specify to whom the statements must be made. Therefore, we conclude that the MRE 803(4) exception should not be found inapplicable in the instant case merely because Tuschak was not a physician. And, since psychiatry is a branch of medicine, see Webster's New Collegiate Dictionary, p 930, it follows that psychiatric treatment is medical treatment.

Second, respondent argues that the exception is inapplicable since the statements were not made for purposes of "medical treatment or medical diagnosis in connection with treatment." Respondent makes much of the fact that Tuschak said that the referral was made so that Heidi would have a place to talk about her feelings. Respondent argues that this is proof that the statements were not made for purposes of treatment or diagnosis. However, a review of Tuschak's entire testimony indicates the opposite. Tuschak stated that the purpose of therapy was to help a child express her feelings in appropriate and healthy ways. She stated that in order to help a child it was necessary to talk to the child. Tuschak testified, on cross-examination, that she followed some of

Freud's theories by "working with" people to help them uncover why they feel or behave a certain way. Therefore, from Tuschak's testimony, it appears that the purpose of Tuschak's sessions with Heidi was to "work with" Heidi to uncover the source of her emotional and behavioral problems and that this therapy was accomplished by "talking." Tuschak's motive was consistent with MRE 803(4) in that she wanted to "treat" Heidi for her emotional and behavioral problems. It also appears that Heidi's motive was consistent with the rule. Tuschak testified that initially she attempted to establish a trusting relationship and a safe environment for the child to express her emotions. She said that Heidi was, at first, upset during their sessions but eventually became more relaxed. At their fifth session, Heidi made a statement which indicated that she had been sexually abused by respondent. The record, then, indicates that when Heidi began to see Tuschak as someone who could help her, as someone she could trust, she made the statements at issue here. Therefore, nothing in the record indicates Heidi's motive was inconsistent with the rule.

In addition, the statements comply with MRE 803(4) in that they were reasonably necessary for treatment and diagnosis. The fact that Heidi suffered sexual abuse was significant in treating the resulting emotional and behavior problems. As a general rule, statements as to fault are not ordinarily necessary for treatment. *People v Wilkins,* 134 Mich App 39; 349 NW2d 815 (1984), lv den 422 Mich 862 (1985). However, sexual abuse by a member of the victim's family poses unique problems, and so there is no way to adequately diagnose and treat the impact of the sexual abuse unless it is known that the abuser was a family member. *Wilkins, supra.*

II

Respondent next argues that the court reversibly erred by allowing two police officers to testify from police records.

The failure to object to the admission of hearsay evidence at trial precludes review of the issue on appeal absent manifest injustice. *Arnold v Ellis,* 5 Mich App 101; 145 NW2d 822 (1966). In the instant case, respondent's attorney initially objected to the officers' testimony from police reports. However, when the probate court ruled that it would only allow testimony concerning complaints in which a conviction resulted, the probate court asked respondent's attorney whether he was satisfied and he replied, "Yes, sir." Respondent's attorney withdrew his objection to the testimony and no further objection was made.

On appeal, respondent argues that the officers' testimony from police reports was inadmissible hearsay. Petitioner alleges that the testimony was within MRE 803(8), which provides that the following are not excluded by the hearsay rule:

> (8) *Public Records and Reports.* Records, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth (A) the activities of the office or agency, or (B) matters observed pursuant to duty imposed by law as to which matters there was a duty to report, excluding, however, in criminal cases matters observed by police officers and other law enforcement personnel, and subject to the limitations of MCLA 257.624; MSA 9.2324.

However, even assuming arguendo that the police reports were within the exception, the officers' testimony from these reports included reference to claims made against respondent by others. For

example, Officer Schrader testified that according to a report dated August 13, 1982, an assault and battery complaint was made against respondent by Amy Winchester. The officer testified that Winchester said respondent had bruised her lip, bumped her face, bumped the back of her head, and split her lip by hitting and beating on her. Therefore, the police reports themselves contained hearsay statements. MRE 805 requires that a hearsay statement within hearsay must *itself* conform with an exception to the hearsay rule to be admissible. There was no indication in the record of the instant case that this hearsay within hearsay came within an exception to the rule. Since only *competent,* relevant and material evidence may be admitted at the adjudicative phase of a proceeding to terminate parental rights, MCR 5.908(C)(1), this testimony was erroneously admitted.

We do not believe that the erroneous admission of the hearsay testimony in this case requires reversal, because the error was harmless. MCR 2.613(A). At the adjudicative phase, only "a preponderance of the evidence" is needed to take jurisdiction. MCR 5.908(C)(1). In the instant case there was a tremendous amount of testimony which indicated that Heidi was sexually abused by respondent. There was also evidence that respondent suffered from severe and chronic alcoholism and that respondent behaved violently when drunk. In addition, there was evidence that respondent suffered from severe psychopathology. The record indicates that Heidi was severely affected by respondent's "problems" and suffered from bed wetting, depression, and fear, amongst other problems. Therefore, we are persuaded that the preponderance of the evidence standard of

proof was more than met without consideration of the erroneous evidence.

### III

An agreement or consent between the parties or their attorneys, respecting the proceedings in an action, is not binding unless it was made in open court, or unless evidence of the agreement is in writing subscribed by the party against whom the agreement is offered or by the party's attorney. MCR 2.507(H), formerly GCR 1963, 507.9. In the instant case the record of the preliminary hearing states that a stipulation was made by the parties in the instant case:

> A stipulation was entered that the testimony of said minor, Heidi Freiburger, shall be taken by a video deposition, with the actual questioning done by Mary Ann Tuschak.

In general, stipulations relating to evidence should be fairly and liberally construed, and the parties are bound thereby. 83 CJS, Stipulations, § 23a, p 49.

Respondent argues that the video deposition in the instant case was improperly shown to the jury since it was merely intended as a discovery tool. Respondent further maintains that the probate court erred in ruling that the tape would be Heidi's only testimony. However, from a reading of the stipulation it appears that the parties agreed that Heidi would testify by way of video deposition. The stipulation says nothing about a "discovery tool" but reads that Heidi's "testimony" would be taken by a video deposition. In addition, the judge indicated at the trial that the parties understood the deposition was being taken in order that Heidi would not have to testify at trial. Therefore,

we conclude that the stipulation was binding and that the probate court did not err in enforcing it here.

It is true that the language of a stipulation will not be construed so as to give the effect of a waiver of a right not plainly intended to be relinquished. *Whitley v Chrysler Corp,* 373 Mich 469; 130 NW2d 26 (1964). Respondent has a right of cross-examination. *Schwartz v Triff,* 2 Mich App 379; 139 NW2d 907 (1966), lv den 378 Mich 720 (1966). However, we believe that the language of the stipulation indicates that respondent waived his right to cross-examine Heidi. The stipulation indicates that the parties intended that Heidi would testify by way of a video deposition and that the parties agreed the questioning in this deposition would be done by Tuschak. Cf. *Wilkins, supra,* pp 47-48 (SHEPHERD, J., concurring).

Respondent also argues that the showing of the video deposition was improper because Heidi was not put "on oath" as required by GCR 1963, 306.3(1), now MCR 2.306(C)(1). However, respondent ignores the fact that GCR 1963, 308.3(2), now MCR 2.308(C)(3)(b) provides that errors or irregularities in the manner of taking a deposition concerning the oath or affirmation are waived unless a seasonable objection is made at the time the deposition is taken. There is nothing to indicate that an objection was made in the instant case.

Respondent claims further that showing the video was improper because it did not contain cross-examination as required by GCR 1963, 302.3, now MCR 2.306(C)(1). However, GCR 1963, 302.2(2), now MCR 2.302(F), states that, if the parties stipulate, the deposition may be taken in "any manner." Here, the parties stipulated that Tuschak would question Heidi. Therefore, the pro-

bate court did not err in showing the video deposition to the jury in the instant case.

IV

Respondent finally argues that the probate court lacked jurisdiction to enter a permanent order because the court failed to comply with the notice requirements of MCL 712A.2(b)(2); MSA 27.3178(598.2)(b)(2), the Saginaw Circuit Court having prior continuing jurisdiction over Heidi arising out of the divorce of her parents. Petitioner responds that the statute does not apply because the amended petition on which the court took jurisdiction was filed on July 12, 1984, during a "moratorium" period in which the notice provision of the statute did not apply.

We conclude that the question of which petition is the relevant one need not be decided, because the Supreme Court has held that the notice provision of the statute, while authorizing temporary orders in the absence of notice, should not be read as proscribing permanent orders. *Krajewski v Krajewski,* 420 Mich 729; 362 NW2d 230 (1984).

The probate court's permanent order, entered on November 13, 1984, preceded the implementation of MCR 3.205(A)(2), so we need not address the effect of that provision.

Affirmed.

E. E. BORRADAILE, J. *(dissenting in part).* I dissent from Part I, but concur in the rest of the majority opinion of this case.

MCR 5.901(B) says:

Although the procedures are not criminal, the court and its officers shall proceed in a manner so as to safeguard procedural rights and the proper

interests of the child, the child's parents, guardians, or custodian, and the public.

In view of the history of the adoption of the Michigan Rules of Evidence by our Supreme Court, and the care taken relative to the language used, I cannot find that MRE 803(4), concerning statements made for the purposes of medical treatment or medical diagnosis in connection with medical treatment, applies to hearsay statements made to a psychiatric social worker. In *People v Wilkins,* 134 Mich App 39, 43-44; 349 NW2d 815 (1984), regarding statements made by a nine-year-old child to a physician concerning a sexual attack, the Court said:

> Since there are no Michigan cases on point, we look to the federal rules and decisions for guidance. FRE 803(4) is identical to MRE 803(4), except that FRE 803(4) is broader in that it only restricts the exception to statements "insofar as *reasonably pertinent* to diagnosis or treatment". FRE 803(4). (Emphasis supplied.) In *United States v Iron Shell,* 633 F2d 77 (CA 8, 1980), *cert den* 450 US 1001; 101 S Ct 1709; 68 L Ed 2d 203 (1981), the Eighth Circuit Court of Appeals discussed the application of FRE 803(4) to the testimony of an examining physician which contained a repetition of a nine-year-old victim's description of an assault as related to the physician by the victim. The court stated that there are two independent rationales for the medical treatment exception. The first is that the patient's statements are likely to be reliable because the patient has a strong motivation to tell the truth, as diagnosis and treatment depend in a large part upon what the patient says to the physician. The second rationale is that facts reliable enough to serve as a basis for medical diagnosis are also reliable enough to escape the hearsay proscription. Since life and death decisions are made by physicians in reliance on the facts related

by the patient, they should have sufficient trustworthiness to be admissible in a court of law.

Despite the fact that the Advisory Committee's Note to FRE 803(4) says that such a statement seems to be allowed even if made to hospital attendants, ambulance drivers or even members of the family, the Michigan Rules of Evidence contain no catchall hearsay exception such as is found in FRE 803(24):

> A statement not specifically covered by any of the foregoing exceptions but having equivalent circumstantial guarantees of trustworthiness . . . .

A panel of this Court in *In the Matter of Render,* 145 Mich App 344, 347-348; 377 NW2d 421 (1985), said:

> A parent's interest in retention of his or her rights "undeniably warrants deference and, absent a powerful countervailing interest, protection." *Stanley v Illinois,* 405 US 645, 651; 92 S Ct 1208; 31 L Ed 2d 551 (1972); *Reist v Bay Circuit Judge,* 396 Mich 326, 341-342; 241 NW2d 55 (1976) (LEVIN, J.). Due to the fundamental nature of this interest, the state bears the burden (imposed by the federal constitution) of proving by clear and convincing evidence that termination of parental rights is warranted. *Santosky v Kramer,* 455 US 745; 102 S Ct 1388; 71 L Ed 2d 599 (1982).

Because the burden in a parental termination case is higher than that in the ordinary civil case, but not quite as high as the proof beyond a reasonable doubt burden in a criminal case, I feel we must be very careful in interpreting the provisions of the Michigan Rules of Evidence so that federally and state protected constitutional rights are not denied. The concern about child abuse has

become a major concern, and while the courts must not ignore the needs of the child, they cannot with impunity ignore constitutional provisions in making decisions as to what evidence can or cannot be used. The Michigan Supreme Court in *People v Kreiner,* 415 Mich 372; 329 NW2d 716 (1982), found that the tender years exception to the hearsay rule did not survive the adoption of the Michigan Rules of Evidence, and it seems to me that we must read the language relative to medical treatment or medical diagnosis with the same care.

In *Attorney General v Beno,* 422 Mich 293, 303; 373 NW2d 544 (1985), our Supreme Court, in dealing with the question of the authority of a chiropractor to do acts which would amount to the practice of medicine, stated that the licensing statute must be read very strictly. Justice BRICK-LEY defined the practice of medicine as

the diagnosis, treatment, prevention, cure, or relieving of a human disease, ailment, defect, complaint, or other physical or mental condition, by attendance, advice, device, diagnostic test, or other means, or offering, undertaking, attempting to do, or holding oneself out as able to do, any of these acts. [1978 PA 368, § 17001(c); MSA 333.17001(c); MSA 14.15(17001)(c).]

In *Tziahanas v Dep't of Licensing & Regulation, Psychology Board,* 143 Mich App 75; 371 NW2d 477 (1985), a panel of this Court dealt with the requirements imposed for a psychologist to be licensed under the statute, MCL 333.18223(1); MSA 14.15(18223)(1). The majority opinion in the instant case seems to equate psychology with psychiatry and misses the point that a psychiatrist is a medical doctor who has interned in psychiatry after receiving his medical degree while psycholo-

gists may or may not have a doctoral degree in psychology or a doctoral degree in a closely related field before being licensed to practice as a psychologist. There is no showing in this case that the person to whom the hearsay statements were made by the child was in fact a psychologist who had a doctoral degree. The only showing in the case is that she was a psychiatric social worker, but nothing is shown as to her training or licensure as required under the Michigan Health Code.

The United States Sixth Circuit Court of Appeals in *In re Zuniga,* 714 F2d 632, 638-639 (CA 6, 1983), cert den 464 US 983; 104 S Ct 426; 78 L Ed 2d 361 (1983), said that, despite compelling considerations, the psychotherapist-patient privilege has received a mixed reception in the federal courts dealing with the issue of whether there was a psychotherapist-patient privilege as there is a physician-patient privilege. The court noted that the states have demonstrated a willingness to recognize the privilege and a substantial number, including Michigan, have adopted some form of psychotherapist-patient privilege and also that many learned authorities have advocated such a privilege. Though we are not dealing with the privilege question here, it is pertinent to note that the federal courts do not allow the psychotherapist-patient privilege in many cases, though *People v Wilkins, supra,* relies on interpretations of FRE 803(4) for determining the scope of the medical diagnosis exception.

The majority opinion also cites *Galli v Reutter,* 148 Mich App 313, 318; 384 NW2d 43 (1985), which states:

> Defendant also contends that the testimony of plaintiff's physical therapist regarding her medical history was inadmissible hearsay because the wit-

ness was not an M.D. subject to the hearsay exception of MRE 803(4). We are not persuaded by the argument. MRE 803(4) is not by its terms limited solely to statements made for purposes of medical treatment by physicians and we decline to read the rule so narrowly. In any event, competent testimony from four doctors established the same medical history so that the error, if any, was harmless. See [People v] Slaton [135 Mich App 328, 338; 354 NW2d 326 (1984)].

It is apparent that the Galli panel was not faced directly with the issue that we have here which relies solely upon the testimony of a psychiatric social worker to establish the necessary evidence to show that the parent had sexual contact with the child.

I also dissent as to the use of evidence of what is shown by the child's actions with the anatomically correct doll. I agree with the majority opinion that such acts are within the hearsay definition. I believe that the use of the anatomically correct doll must fall unless the foundation is laid to show that its use has achieved general scientific acceptance. See People v Young, 418 Mich 1; 340 NW2d 805 (1983), where the Court, in dealing with the use of serological electrophoretic analysis, followed Frye v United States, 54 US App DC 46; 293 F 1013 (1923); People v Davis, 343 Mich 348; 72 NW2d 269 (1955); People v Barbara, 400 Mich 352; 255 NW2d 171 (1977); and People v Tobey, 401 Mich 141; 257 NW2d 537 (1977). The same issue was discussed in People v Gonzales, 415 Mich 615; 329 NW2d 743 (1982), relating to the use of hypnosis in questioning witnesses.

I also disagree with the result in In the Matter of Rinesmith, 144 Mich App 475, 481; 376 NW2d 139 (1985), which determined that the response of

a child using anatomically correct dolls does not rise to the level of a scientific test subject to the so-called *Frye/Davis* rule. The opinion determines that it is not a scientific test without showing what a scientific test is. In my opinion, the same criteria for evaluation should be used as the Supreme Court has required for lie-detector tests, truth serums, and alcohol and narcotics tests. A lie-detector test does not use chemicals and has an approach similar to the use of an anatomically correct doll.

I would adopt the reasoning of the court in *State v Mueller,* 344 NW2d 262 (Iowa App, 1983), in which the court considered statements made to a child psychologist by a three-year-old as well as the son's nonverbal conduct with dolls that the psychologist interpreted as a sex act by the father in a criminal case. In that case, the prosecutor argued that the testimony came within the hearsay exception for statements made for purposes of medical diagnosis, and the court held that the statements made to the child psychologist did not come within the medical diagnosis hearsay exception and that the sex act demonstrated by the child with the dolls did not change the hearsay character of such testimony. The court found that the admission of all such testimony was prejudicial and reversed the conviction of the defendant father.

I would remand this case to the probate court juvenile division for retrial and prohibit the admission of statements made by the child to the psychiatric social worker and further require that a foundation be laid showing that the use of anatomically correct dolls has general acceptance within the scientific community before any testimony could be had relating thereto.