*In re* BEDWELL

Docket No. 84552. Submitted June 11, 1986, at Detroit. Decided
  January 30, 1987.
    The Kalkaska County Probate Court, Odell B. Carlisle, J., termi-
  nated Mary V. Strohmier's parental rights to her minor chil-
  dren, Michael, Herbert, and Rachel Bedwell. The statutory
  basis for termination was not specified in the termination
  orders but apparently the basis was emotional neglect. Stroh-
  mier appealed.
    The Court of Appeals *held:*
    1. The decision to terminate parental rights was clearly
  erroneous because the record lacks clear and convincing evi-
  dence of neglect.
    2. There was testimony that a parental bond never developed
  between Strohmier and her children. The lack of a positive
  parental bond between a parent and minor child does not
  constitute emotional neglect under the applicable statute when
  the failure to bond is not the result of a culpable act or
  omission on the part of the parent. Any failure to bond would
  have resulted from Strohmier's inability to· provide emotional
  care, not from a disregard of her duty to provide emotional
  care. There is no evidence of a culpable or blameworthy act or
  omission on Strohmier's part.
    3. The fact that Strohmier may have agreed to abide by
  certain conditions of a treatment plan set forth by the probate
  court and then failed to comply with all those conditions does
  not mean that she waived her right to have the Department of
  Social Services meet its burden of proof in the termination
  proceedings. The DSS still had to prove neglect by clear and

REFERENCES
Am Jur 2d, Infants §§ 14, 16.
Am Jur 2d, Juvenile Courts and Delinquent and Dependent Chil-
  dren § 24.
Am Jur 2d, Parent and Child §§ 39, 40, 43.
Am Jur 2d, Stipulations § 7.
Validity and application of statute allowing endangered child to be
  temporarily removed from parental custody. 38 ALR4th 756.
Validity of state statute providing for termination of parental
  rights. 22 ALR4th 774.

convincing evidence and failed to do so. Strohmier's failure to comply with the conditions agreed to does not justify the termination of her parental rights in the absence of clear and convincing evidence of the statutory grounds for termination.

4. On remand, Strohmier may bring a motion to disqualify the probate court judge and may request other court appointed counsel in accordance with the Michigan Court Rules.

Reversed and remanded.

J. M. BATZER, J., concurred in the judgment because proper procedures for the termination of parental rights were not followed in this case and because he has reservations as to whether the probate court had jurisdiction over the children following the adjudicative hearing. He dissented however from the portion of the opinion which holds that there was not clear and convincing evidence of neglect sufficient to support a termination of parental rights. He also took issue with recent court decisions which have held that the term "neglect," as used in the statute providing for termination of parental rights, requires some degree of culpability by requiring a respondent to have committed an act or omission which is blameworthy. He would hold that neglect should be measured more by the needs of the child and less by the fault, culpability or blameworthiness of the parent.

1. PARENT AND CHILD — TERMINATION OF PARENTAL RIGHTS — NEGLECT.

The term "neglect" as used in the statute providing for termination of parental rights requires some degree of culpability by requiring a respondent to have committed an act or omission which is blameworthy.

2. PARENT AND CHILD — TERMINATION OF PARENTAL RIGHTS — EVIDENCE.

Clear and convincing evidence of long-time neglect or serious threats to the future welfare of the child must be presented in order to terminate parental rights.

3. PARENT AND CHILD — TERMINATION OF PARENTAL RIGHTS.

The proper inquiry in proceedings to terminate parental rights is whether the state has proven the parent unfit by clear and convincing evidence according to statutory standards, not whether the minor children would be better off in a foster home.

4. PARENT AND CHILD — TERMINATION OF PARENTAL RIGHTS — BONDING — EMOTIONAL NEGLECT.

The lack of a positive parental bond between a parent and a

minor child does not constitute emotional neglect under the statute providing for termination of parental rights when the failure to bond is not the result of a culpable act or omission on the part of the parent (MCL 712A.19a; MSA 27.3178[598.19a]).

5. PARENT AND CHILD — TERMINATION OF PARENTAL RIGHTS — BONDING.

The possibility that a minor child might establish a bond with another adult does not support termination of a parent's parental rights (MCL 712A.19a; MSA 27.3178[598.19a]).

6. STIPULATIONS — JUDICIAL CONSTRUCTION.

A stipulation will be interpreted with respect to the subject matter and will be construed in light of the surrounding circumstances and the entire record.

7. PARENT AND CHILD — TERMINATION OF PARENTAL RIGHTS — PROBATE COURT ORDERS.

A respondent's failure to comply with the conditions of a probate court order does not justify the termination of parental rights in the absence of clear and convincing evidence of the statutory grounds for termination (MCL 712A.19a; MSA 27.3178[598.19a]).

*Philip J. Crowley,* Prosecuting Attorney, for petitioner.

*Mark A. Risk,* for respondent.

Before: DANHOF, C.J., and CYNAR and J. M. BATZER,* JJ.

PER CURIAM. Respondent-mother, Mary V. Strohmier, appeals as of right from the final order of the Kalkaska County Probate Court of April 3, 1985, which terminated her parental rights to the minor children, Michael Bedwell, born June 4, 1980, Herbert Bedwell, born May 8, 1981, and Rachel Bedwell, born April 26, 1982. Respondent-father, Paul E. Bedwell, does not challenge the order terminating his parental rights to the minor children.

* Circuit judge, sitting on the Court of Appeals by assignment.

Respondent-mother has raised several meritorious issues on appeal, but we address only those that are dispositive. We reverse the termination order dated September 5, 1984, and the final order dated April 3, 1985, but only with respect to the termination of respondent-mother's parental rights.

At the outset we note that both orders failed to specify the statutory basis for termination, contrary to Juvenile Court Rule 14 and MCR 1985, 5.914. The order of September 5, 1984, ordered the termination of respondent-mother's parental rights based upon the "stipulation of the parties" and further stated that the order should not take effect until March 1, 1985. It gave respondent-mother an opportunity to have the order set aside if she complied with eleven specified conditions. The final order of April 3, 1985, stated that respondent-mother failed to comply with six conditions and ordered the termination order to take effect. We note that this procedure for terminating parental rights is not one established by statute. We do not approve of this procedure for reasons discussed *infra.*

Assuming that the basis for terminating respondent-mother's parental rights was that of emotional neglect, we would point out that none of the court files for the minor children contain a copy of a petition alleging emotional neglect. According to the timetable found in the appellate brief of respondent-mother, emotional neglect petitions were filed on May 26, 1983. From the record it appears that respondent-mother admitted the allegation of emotional neglect at the adjudicative hearing held August 24, 1983, in exchange for the dismissal of a petition alleging neglect as a result of an incident on March 21, 1983. We assume that emotional

neglect was the basis for terminating parental rights for purposes of deciding this appeal.

The probate court's decision to terminate parental rights was clearly erroneous because the record lacks clear and convincing evidence of neglect. We believe that this is the dispositive issue in this appeal. We review a decision to terminate parental rights under the clearly erroneous standard. *In re Cornet,* 422 Mich 274, 277; 373 NW2d 536 (1985). A probate court's finding in a proceeding to terminate parental rights is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been committed. *In re Cornet, supra,* p 278, quoting *Tuttle v Dep't of State Highways,* 397 Mich 44, 46; 243 NW2d 244 (1976).

MCL 712A.19a; MSA 27.3178(598.19a) authorizes a probate court to terminate parental rights if it finds that one of the enumerated grounds has been established. Assuming that emotional neglect served as the basis for the probate court's orders in the case sub judice, emotional neglect would come within subsection (e) of the statute: "[T]he parent or guardian is unable to provide a fit home for the child by reason of neglect."

In *Fritts v Krugh,* 354 Mich 97; 92 NW2d 604 (1958), our Supreme Court stated that the "entry of an order for permanent custody due to neglect must be based upon testimony of such a nature as to establish or seriously threaten neglect of the child for the long-run future." *Fritts, supra,* p 114. More recently, the term neglect has been construed to require some degree of culpability by requiring a respondent to have committed an act or omission which is blameworthy. *In re McDuel,* 142 Mich App 479, 485-486; 369 NW2d 912 (1985). See also, *In re Draper,* 150 Mich App 789; 389

NW2d 179 (1986), lv den 426 Mich 867 (1986); *In re Tedder,* 150 Mich App 688, 698-699; 389 NW2d 149 (1986), lv den 426 Mich 874 (1986).

The petitioner bears the burden of proving by clear and convincing evidence that termination of parental rights is warranted. *In re Atkins,* 112 Mich App 528, 541; 316 NW2d 477 (1982), lv den 413 Mich 912 (1982). The quantum of neglect required to support termination of parental rights under the statute is not capable of precise definition. *In re Kantola,* 139 Mich App 23, 27; 361 NW2d 20 (1984). A distinction exists between evidence which would support an order of temporary custody by reason of neglect and evidence necessary to support a permanent custody order. *Fritts, supra,* p 113. In order to terminate parental rights, real evidence of long-time neglect or serious threats to the future welfare of the child must be presented. *Fritts, supra,* p 114.

In our view, the proper inquiry is whether the state has proven respondent unfit by clear and convincing evidence according to statutory standards, and not whether the minor children would be better off in a foster home. Compare, *McDuel, supra,* p 488.

At the adjudicative hearing held August 24, 1983, respondent-mother admitted to the allegation of emotional neglect. The probate court accepted the report of Dr. Charles Laufer for the factual basis of her admission. The minor children had been removed from respondent-mother's care on April 27, 1983. At the adjudicative hearing, the probate court decided to keep the minor children in its temporary custody in foster care. The parties stipulated on the record to the conditions of a treatment plan for respondent-mother.

On February 29, 1984, at a review hearing, the probate court decided to keep in effect the treat-

ment plan which had been agreed upon, with the exception of the last two conditions. At that time it was reported that respondent-mother lived in Traverse City and received welfare benefits. A dispositional hearing was scheduled.

On August 29, 1984, the only evidence of emotional neglect was established through the testimony of Dr. Charles Laufer, the sole witness at the hearing. He testified that after a third evaluation of the minor children and respondent-mother he found that the children had not bonded to respondent-mother. He attributed this lack of bonding to the emotional problems of respondent-mother. He explained that respondent-mother was emotionally abused as a child and that her emotional disturbance was a result of that abuse. He further testified that when respondent-mother raised certain defenses in her personality, she blocked emotionally and the communication problem existed.

Dr. Laufer opined that she was mentally capable of changing her problems with therapy, but questioned her emotional capability to change. He opined that respondent-mother needed to solve her own emotional problems and needed to learn parenting skills. He indicated that she had opened up to him on occasion. He testified that a female counselor who was completely independent, uninfluenced, and without knowledge of the past and who could objectively review the situation would offer the best help to respondent-mother.

Dr. Laufer opined that the minor children were starved for bonding and that they had started to bond with their foster mother. He opined that respondent-mother needed to prove quickly that she could bond with the children. He further expressed the belief that the visitations between respondent-mother and the children were not go-

ing to have an impact on the failure to bond. He recommended that visitations be discontinued.

The lack of a positive parental bond between a respondent and a minor child does not constitute emotional neglect under the statute when it is not the result of a culpable act or omission on the part of the parent. *Draper, supra,* 150 Mich App 804-805. Further, the possibility that a minor child might establish a bond with another adult does not support termination of a respondent's parental rights. *Draper, supra,* p 805.

In this case, the expert's testimony attributed the development of respondent-mother's emotional problems to emotional abuse in her childhood. We are unable to say that her emotional problems constitute neglect as that term has been defined in *McDuel, supra,* and as it has been applied in *Tedder, supra,* 150 Mich App 698-699. In other words, the failure to bond did not result from respondent-mother's disregard of her duty to provide emotional care, but resulted from her inability to provide emotional care. The evidence does not reveal a culpable or blameworthy act or omission by respondent-mother.

Nonetheless, the probate court terminated her parental rights at the dispositional hearing based upon the evidence presented and based upon the stipulation the parties had placed on the record. The record reveals that respondent-mother did not fully understand the terms of the stipulation and that she contested certain conditions, but ultimately agreed to the stipulation on the advice of her attorney and after some discussion with the court.

The language of a stipulation will not be construed so as to give the effect of waiver of a right not plainly intended to be relinquished. *Whitley v Chrysler Corp,* 373 Mich 469, 474-475; 130 NW2d

26 (1964). The stipulation will be interpreted with respect to the subject matter and will be construed in light of the surrounding circumstances and the entire record. *Whitley, supra.* See also, *In re Freiburger,* 153 Mich App 251, 262; 395 NW2d 300 (1986). Respondent-mother had the right to have petitioner prove neglect by clear and convincing evidence. In light of the important interest of the parent-child relationship in our society, and in light of the circumstances presented on the record in this case, we are unwilling to say that respondent waived her right to have petitioner meet its burden of proof.

Finally, we turn to the final order dated April 3, 1985, which effectively terminated respondent-mother's parental rights. The sole basis stated for entry of the order was respondent-mother's non-compliance with six conditions of the termination order. Again, petitioner presented no clear and convincing evidence of emotional neglect. Instead, two witnesses were presented to prove noncompliance with the conditions of the previous order.

A respondent's failure to comply with the conditions of a probate court order does not justify the termination of parental rights in the absence of clear and convincing evidence of the statutory grounds for termination. *Draper, supra,* p 801. While noncompliance may be considered in the determination of whether a parent is unable to provide a fit home by reason of neglect, such noncompliance should not be over-emphasized and, further, is not determinative of the outcome of a termination hearing. *Draper, supra,* pp 801-802.

The procedure employed by the parties for terminating parental rights placed undue emphasis upon compliance or noncompliance with the prior order. Moreover, this noncompliance was outcome-determinative in the probate court's decision to

give effect to the September 5, 1984, termination order. For these reasons, we disapprove of the procedure employed to terminate respondent-mother's parental rights in this case.

We distinguish this case from *In re Adrianson,* 105 Mich App 300, 319; 306 NW2d 487 (1981), in which a similar procedure was not criticized, on the ground that the petitioner had met its burden of proof at earlier hearings in that case. In contrast, petitioner never satisfied its burden of proof in this case.

On remand respondent-mother may bring a motion to disqualify the probate court judge and may request other court-appointed counsel in accordance with the Michigan Court Rules of 1985.

Reversed and remanded.

J. M. BATZER, J. *(concurring in part and dissenting in part).* I concur in the judgment of the Court because, as the majority initially notes, proper procedures for the termination of parental rights were not followed here. Termination is a grave step; the procedural failures alone here are sufficient for me to set aside the termination of respondent-mother's parental rights. Moreover, absent a proper petition alleging "emotional neglect," I have serious reservations as to whether the probate court ever had jurisdiction over the children subsequent to the August 24, 1983, adjudicative hearing.

I respectfully dissent, however, from that portion of the Court's opinion which holds there was not clear and convincing evidence of neglect sufficient to support a termination of parental rights under MCL 712A.19a(e); MSA 27.3178(598.19a)(e). I think it unnecessary to reach this issue in order to reverse the judgment of the probate court, but inasmuch as the Court has spoken on the matter, I

am constrained to say that, in my view, if the jurisdiction of the probate court had been properly invoked and proper proceedings conducted, the evidence of the parental neglect of these children is certainly ample to support termination of rights.

I would further note that I am troubled by the statutory term "neglect" as it has recently come to be construed. The term neglect, as the majority notes, is now construed as requiring "some degree of culpability requiring a respondent to have committed an act or omission which is blameworthy." This requirement, as nearly as I can determine, was first enunciated in *In re Bailey*, 125 Mich App 522, 527; 336 NW2d 499 (1983), where it was stated:

> Neglect per se is defined neither in Michigan's statute nor case law. In general, however, MCL 712A.2(b); MSA 27.3178(598.2)(b) provides the basis for the assumption of jurisdiction by the juvenile division of the probate court. This statute would seem to support appellants' argument that a *termination for reasons of neglect requires a finding of some intent or culpability.* Jurisdiction over a child may be assumed when a parent who is "able to do so" fails to properly care for the child. [Emphasis added.]

However, MCL 712A.2(b); MSA 27.3178(598.2)(b) provides in pertinent part that the juvenile division of the probate court shall have:

> (b) Jurisdiction in proceedings concerning any child under 17 years of age found within the county:
> (1) Whose parent or other person legally responsible for the care and maintenance of the child, when able to do so, neglects or refuses to provide proper or necessary support, education as required by law, medical, surgical, or other care necessary

for his or her health or morals, *or who is deprived of emotional well-being,* or who is abandoned by his or her parents, guardian, or other custodian, or who is otherwise without proper custody or guardianship.

(2) Whose home or environment, by reason of neglect, cruelty, drunkenness, criminality, or depravity on the part of a parent, guardian, or other custodian, is an unfit place for the child to live in. [Emphasis added.]

Thus, it would appear that the phrase "when able to do so," which refers to parental ability to care for children, is not applicable to a finding of emotional neglect, which is phrased in the disjunctive in the statute.[1]

Nowhere to my knowledge has the Supreme Court stated that presence of "intent or culpability" is a requirement for neglect. Moreover, one wonders if "culpability" isn't more of a policy judgment in the eye of the beholder on ad hoc facts than a legal test. These problems are, I think, the result of a creaky and often confusing statute, enacted in 1939, extensively revised in 1944, and amended piecemeal since that time. Compare, e.g., *In re Sharpe,* 68 Mich App 619; 243 NW2d 696 (1976) (§ 19a enumeration of causes for termination of parental rights is not exclusive),

---

[1] If parental ability to provide proper care were a prerequisite to the juvenile division's exercising its neglect jurisdiction, then that court would be relieved of a large part of its caseload—and many children would suffer more than they do because the juvenile courts of this state would be relieved of their "dependency" cases, i.e., those cases where parents, through no fault of their own, are unable to provide a minimum level of proper care for their children. Such a result would be disastrous, yet the probate code nowhere refers to "dependency jurisdiction." Surely, if culpability is necessary for a juvenile court to exercise its neglect jurisdiction, then absent culpability that court, the jurisdiction of which is wholly statutory, *In re Kasuba Estate,* 401 Mich 560, 566; 258 NW2d 731 (1977), necessarily is without jurisdiction in "dependency" matters—a wholly bizarre and pernicious result and one which was, I believe, unintended by the Legislature.

with *In re McDuel,* 142 Mich App 479; 369 NW2d 912 (1985) (§ 19a enumeration of causes is exclusive).

Be that as it may, I think there is in the record "real evidence of long-time neglect, or serious threats to the future welfare of the child," *Fritts v Krugh,* 354 Mich 97, 116; 92 NW2d 604 (1958), such as could be sufficient to justify termination of parental rights.

Additionally, even measured under the "culpability-blameworthy" standard, I am of the view that respondent bears some culpability or blame. When a parent leaves three children all under the age of three years unattended by an adult, where one of them is eating a stick of deodorant when discovered by an adult, some blameworthiness attaches in my view. This was the condition encountered by one of petitioner's caseworkers visiting the cabin of respondent-mother in order to persuade respondent to follow through with medical treatment for one of the children.

The record here shows respondent-mother is "emotionally disturbed" and incapable of providing emotional warmth and love to these children. Her condition may well not be her "fault" to a treating psychologist in that her condition had its origins in childhood circumstances she could not control. But is not the same true for a character-disordered abuser of children? Is such a person then without fault or culpability in juvenile court proceedings? Cannot the juvenile court act in the fact of *serious* threats to the future welfare of the child where there is a real evidence of long-term neglect—as measured by the needs of the child? I would so measure neglect—more by the needs of the child and less by the fault, culpability or blameworthiness of the parent. The very lack of emotional disturbance in the mother was one of

the factors relied upon by the Court in *In re Moore,* 134 Mich App 586; 351 NW2d 615 (1984), in reversing an order of termination. Now the Court relies on its presence in order to set aside a termination.